MYRA E. BRIGGS, APPELLEE, V. ROYAL HIGHLANDERS, APPELLANT.*

FILED JUNE 25, 1909. No. 15,758.

1. **Insurance:** BENEFIT ASSOCIATION: NEW BY-LAW. A by-law providing for a forfeiture, adopted by a fraternal beneficiary association subsequent to the issuance by it of a benefit certificate, will be strictly construed against the association, and, if passed in contravention of the provisions of the statute governing such association, it will be held void and of no effect. *Lange v. Royal Highlanders*, 75 Neb. 188.

2. ———: ———: GOVERNMENT: CHANGES IN CERTIFICATE. "Where a fraternal benefit association has not complied with the provisions of section 1, chapter 47 of the act of 1897, and adopted a representative form of government, its governing body is without power to adopt an edict or by-law changing the terms and obligations of a mutual benefit certificate theretofore issued to one of its members." *Lange v. Royal Highlanders*, 75 Neb. 196.

* See opinion on rehearing, 85 Neb. —,

3. ——: ——: ——. Where, under the provisions of the constitution and by-laws of a fraternal beneficiary association, the delegates to the governing body thereof, regularly elected by the members of said association, cannot of themselves, and without the participation of members of committees appointed from members outside of such delegates, legally and of right adopt, alter, or amend the edicts and laws of such association and absolutely control the government of the same, such governing body is not a representative body, and an association so constituted and governed cannot be said to have a representative form of government.

4. ——: ——: SUICIDE. Suicide will not defeat recovery upon a benefit certificate in a fraternal beneficiary association unless such certificate, together with the lawfully enacted laws and edicts of such association, so provide in express terms.

APPEAL from the district court for Cuming county: GUY T. GRAVES, JUDGE. *Affirmed.*

*Hainer & Smith,* for appellant.

*A. R. Oleson, contra.*

FAWCETT, J.

On June 5, 1897, Robert N. Briggs, whom we will hereinafter designate as the assured, became a member of a local castle of defendant society, and under that date received from defendant a benefit certificate upon his life in the sum of $3,000, payable at his death to his wife (plaintiff) and son. In April, 1905, the assured, for the sole purpose of changing his beneficiary, surrendered his certificate of June 5, 1897, and received from defendant, as a substitute therefor, the benefit certificate in suit. Defendant wrote on the face of such later certificate the words: "The date of certificate No. 1,741 (the former certificate) shall be the date on which the settlement of this certificate shall be based." In its answer defendant admits that the later certificate "was issued in lieu of said first-named certificate."

The defense pleaded is suicide. It is conceded that, at the time the assured became a member of defendant society and obtained his original certificate, there was noth-

ing in the edicts and laws of the society making suicide a defense, but defendant alleges that in June, 1901, its edicts and by-laws were amended by inserting the following provision: "The benefit certificate issued to a member shall become void and all benefits thereunder shall be forfeited in case the member shall die from suicide, felonious or otherwise, sane or insane"; and that in September, 1905, they were again amended so as to provide: "In case of the suicide of a member, either sane or insane, the amount of all contributions of a member to the fidelity fund of the fraternity only shall be paid to the beneficiary named in the certificate," and that the amount contributed by assured during his lifetime to the fidelity fund is the sum of $106.27, which amount it tendered plaintiff and which plaintiff refused, and that it has kept the tender good by depositing the same in court for the use and benefit of the plaintiff. The reply admits that the assured committed suicide, and alleges that the acts of defendant in attempting to amend its edicts and by-laws in June, 1901, and in September, 1905, are void, for the reason that defendant did not, at either of said times, have a representative form of government; that the body designated "Executive Castle," which is the governing body of defendant, is not a representative body; that it is not elected by the members of said defendant nor by delegates chosen thereby, and that the same is an arbitrary self-perpetuating body, not representative in form and not authorized or empowered by defendant to enact by-laws, rules or edicts for the government of the members of defendant, or to revise or amend the same. There was a trial to the court without the intervention of a jury, and judgment for the plaintiff for the full amount of her certificate, with interest; from which judgment this appeal is prosecuted.

The motion for a new trial in the court below is as follows: "(1) That the findings of the court are not sustained by the evidence in the case, but are contrary to the manifest weight thereof. (2) The findings and judgment of the court are contrary to the law of the case.

(3) That the finding and judgment of the court should have been for the said defendant instead of for the said plaintiff." This motion raises but the one question: Is the judgment of the district court sustained by the evidence? If we give any consideration whatever to the second paragraph of the motion, then the question would simply be: Can a judgment, based upon the evidence actually received, be sustained?

Some point is made by defendant that the amendment of its edicts and laws in 1901 was prior to the issuance of the certificate in suit, and that the issuance and acceptance of such certificate was subject to the edicts as so amended. This contention is without merit. The mere substitution of the certificate in suit for the one first issued, for the sole purpose of changing the beneficiary, did not constitute such certificate a new and independent contract. We think it is clear that the certificate in suit must be considered, so far as its date and the rights and liabilities of the respective parties are concerned, as if it had been issued upon the date of the issue of said first certificate, viz., the date of assured's admission into the society.

That the alleged change in the edicts and laws of defendant by its convention of June, 1901, was ineffectual and void has already been determined by this court, in *Lange v. Royal Highlanders* (this same defendant), 75 Neb. 188. The opinion in that case so fully and fairly sets out the history of defendant from its organization down to and including its convention of June, 1901, and its attempted amendment of its edicts and by-laws at that convention, that it need not be restated here. The defense in that case, as in this, was suicide. We there held that defendant down to and including its convention of June, 1901, had not adopted a representative form of government and that its attempted change of the by-laws at that convention was therefore null and void. Down to that time, therefore, the rights of the parties in this case must be considered as having been determined by our decision in that case.

This leaves for our consideration the sole question as to whether or not the action of defendant in September, 1905, was of such a character as to relieve it of liability in this action. The convention of September, 1905, was composed of 25 delegates elected from 25 districts, the number and boundaries of which districts were determined by an executive committee, which had been selected by the unrepresentative body of 1901, together with 13 officers, also elected by that body, and 10 committeemen appointed by the president elected at that convention. Did this constitute a representative government? It is claimed by defendant that, when the by-laws were voted upon at the convention of September, 1905, the 10 committeemen, by request of the president, refrained from voting, and that the change in the edicts at that convention was voted for by all of the delegates. The fact remains, however, as admitted by the secretary of defendant upon the witness-stand, that these 10 committeemen had a legal right to vote: "Q. Now, this statement of the president, requesting the members of the committee, who were not delegates, not to vote upon the adoption of these edicts, was a mere voluntary request, was it not? A. Well, I should say it was. At least they did not ask him to make any such provision. Q. But under the edicts under which that executive castle had convened, these members of the committees were entitled to vote thereon? A. They were, but he would not have appointed them committeemen had they insisted upon voting." The president does not confirm the assertion made in the latter clause of this answer. Moreover, the voluminous journal of the proceedings of that convention, introduced in evidence, does not show that the president ever made such a request or imposed any such restriction upon the committeemen. The journal does show, however, that none of the members of that convention voted on any change of the by-laws. The chairman of the committee on edicts made a lengthy report to the convention, recommending a number of changes of certain specific sections in the edicts and by-laws

theretofore existing, among which was one recommend-
ing a change in section 141, designating the conditions
which should thereafter be a part of every certificate
issued by defendant, which proposed amendment pro-
vided: "That in case of the suicide of a member, either
sane or insane, the amount of all contributions of the
member to the fidelity fund of the fraternity only shall be
paid to the beneficiary named in this certificate." The
journal then shows that, after a short discussion of that
proposed change, the president, who is designated by the
order as "Most Illustrious Protector," asked: "Are there
any other suggestions? If not, the section will be
passed." This is the only record of any action taken upon
the proposed amendment. We hardly think this sus-
tains defendant's contention that all of the delegates at
that convention voted for the proposed change.

The laws of the order provide: "The edicts of the Royal
Highlanders shall not be altered or amended except
when two-thirds of all the members of the executive castle
favor such changes." Section 203, Edicts of 1901. This
language is plain and unambiguous, and prohibits any
change of the edicts of the society except when two-thirds
of all its members favor such change. Under the wording
of this section of the edicts, any member of the executive
castle who refrained from voting on any proposed change
of the edicts would thereby in effect vote against it. It
is conceded that there were 48 members of that execu-
tive castle, viz., 25 delegates, 13 officers, and 10 commit-
teemen. The executive castle being composed of that
many members, its edicts could not be changed unless
36 of those members voted for such change. The fact
therefore that the president might request the 10 commit-
teemen to refrain from voting, or that the 10 committee-
men and the 13 officers should all refrain from voting,
would not add to the powers of the regularly elected
delegates to amend any of the edicts of the society. If
we exclude the committeemen, the result is the same. It
is not claimed that the 13 officers elected by the conven-

tion of June, 1901, promised, or were even requested, to refrain from voting. Their right to vote is not questioned. Excluding then the 10 committeemen, it would still be impossible for the 25 delegates, alone, to make any change in the edicts and laws which previously had been adopted by the unrepresentative body of 1901. There being 25 delegates and 13 officers, a total of 38, in the convention of 1905, it would require 26 votes to change any of the edicts and by-laws of the society, so that the officiary of this society elected at a convention in June, 1901, composed of 9 delegates and 16 officers, could at the convention of 1905 effectually balk any attempt at amendment on the part of the delegates. As we view the matter, the question of whether the committeemen or the officers, or both, refrained from voting on the single question of amending the edicts is immaterial. The test of whether or not defendant had a representative form of government is not whether certain members of its governing body refrained from voting on some particular question, but, rather, whether they had a voice and the right to vote on all questions of government. That the officers and committeemen elected and appointed as herein shown did have such right is beyond dispute.

It is insisted by defendant that the convention of September, 1905, amended section 9 of its laws and edicts by adding the words, "Provided, however, only elected officers and the accredited delegates from representative castles shall be entitled to vote," and that by such amendment appointive officers and committeemen would not thereafter be entitled to that right. If this change in section 9 would have the effect of subsequently giving defendant a representative form of government, which we do not decide, it cannot avail defendant in this case, for two reasons: (a) The statute under which defendant is operating provides: "Every such society shall file with the auditor of public accounts a copy of its constitution and by-laws duly certified to by the secretary or corresponding officer, and before any amendment, change or alteration

thereof shall take effect or be in force a copy of such amendment, change or alteration, duly certified to by its secretary or corresponding officer, shall be filed with the auditor of public accounts." Ann. St. sec. 6656. The record shows that a copy of the amendment of the edicts and by-laws of the convention of September, 1905, was not certified by the chief secretary and filed with the auditor of public accounts until December 1, 1905, so that they did not become effective until long after the adjournment of the convention which it is claimed made the change in regard to suicide. (b) It further appears from the testimony of the chief secretary that when the change was made by the convention of September, 1905, the rules and regulations provided for by the convention of June, 1901, were followed. It also appears in the record that the officers elected at the convention of September, 1905, were not installed in office until the closing act of that convention on the last day of its session. It therefore appears that that convention, during its entire session, was subject to the control of officers and committeemen which rendered its proceedings, as to any amendment of its laws and edicts at least, unrepresentative in character and void.

It seems useless to pursue this matter further. Viewed from any standpoint, the executive castle, as it existed in September, 1905, was not a representative body, and as so constituted the defendant did not have a representative form of government. It follows, therefore, that the attempted change of the by-laws in September, 1905, was as ineffectual as the attempted change thereof in June, 1901. There being nothing in the certificate of membership issued to the assured, or in the edicts and by-laws of the defendant as they existed at the time he was admitted into membership and received his certificate, which exempted the defendant from liability in the event of suicide, we must hold that the judgment of the district court was right, and it is

AFFIRMED.