MYRA E. BRIGGS, APPELLEE, v. ROYAL HIGHLANDERS, APPELLANT.

FILED JANUARY 20, 1910. No. 15,758.

1. **Insurance:** BENEFIT ASSOCIATION: GOVERNMENT. Upon the facts discussed in the opinion, it is *held* that, at the time the edicts of the Royal Highlanders were amended in 1901 or 1905, said society did not have a representative form of government within the meaning of section 6635 *et seq.*, Ann. St. 1909.

2. ———: ———: ———. Chapter 47, laws 1897, did not by its own force amend the edicts of the Royal Highlanders so as to make its government representative in form.

OPINION on motion for rehearing of case reported in 84 Neb. 834. *Rehearing denied.*

ROOT, J.

Upon consideration of the briefs and argument in support of defendant's application for a rehearing, we have

concluded that a rehearing ought not to be granted, but that our opinion should be modified. It now appears that we inadvertently failed to make proper application of the evidence concerning the convention of defendant's executive castle in 1905. We considered a report of the committee of the whole, and not the action of the executive castle, with reference to the amendment of section 41 of the edicts. Said section was amended by the members composing that castle.

Defendant's counsel argue that section 6635, Ann. St. 1909, eliminated from the by-laws all provisions thereof repugnant to law, and by that process defendant's edicts were so modified that, when section 41 thereof was amended in 1901 and in 1905, its government was representative within the meaning of the law. We held in *Lange v. Royal Highlanders*, 75 Neb. 188, that prior to the enactment of chapter 47, laws 1897, defendant had complied with the laws of this state, and was entitled to insure its members. Chapter 47, *supra*, did not by its own force translate defendant from a corporation controlled by its officers into one subject to the will of its members as expressed through the voice of their duly accredited representatives. With the appearance of that law it beame necessary for defendant by appropriate action to so modify its by-laws as to conform to the terms of the new statute. Notwithstanding the arguments of counsel, we are still of the opinion that such an alteration had not been made prior to the amendment in 1905 of section 41 of defendant's edicts. The incorporators of the society, three in number, in the certificate required by statute prior to 1897, designated themselves as executive officers of the order or society. By-laws, designated "edicts," were adopted for the corporation, and provision made for amendments thereto by a two-thirds vote of the members of the executive castle present at any regular or special meeting thereof. The original by-laws also provide that the executive castle should be composed of its officers, standing and special committees, and

delegates elected by subordinate or tributary castles. Twelve officers should be elected by the executive castle; seven officers appointed by the elected officers, and fifteen committeemen appointed by six designated elective officers. All appointive officers and committeemen held office at the pleasure of the appointing power. The elective officers constituted one-third of the executive castle and a quorum of that body. The members of the corporation were authorized to select one delegate to represent them in the executive castle. One of the original incorporators was given authority to fill any vacant office, and only members of the executive castle were eligible to hold elective office. It is apparent that the elected officers in the executive castle were in complete control of the affairs of the society. As stated by Mr. Commissioner OLDHAM in *Lange v. Royal Highlanders, supra,* the incorporators of the association constituted an oligarchy vested with plenary power over the affairs of the corporation. This power extended not only to the business affairs, but to the succession in office of all representatives of the corporation. Chapter 47, *supra,* by its terms did not until January 1, 1898, apply to associations created before the passage of that act. Defendant's executive castle convened in June, 1897, subsequent to the date Briggs became a member of the order, and, by an amendment to the edicts, made suicide by a member a defense to an action on his certificate. December 21, 1897, a special meeting of the executive castle was held and the edicts reamended so as to exclude all reference to suicide. By virtue of the edicts, as amended in December, 1897, the composition of the executive castle remained as theretofore, except that appointive officers could not be selected until after the installation of the elective officers, which should occur immediately before the closing ceremonies. The edicts also provided that the executive castle should, subsequent to June, 1897, meet but once in four years, except in cases of emergency. In the quadrennial convention of the executive castle in 1901, nine delegates, selected by rep-

resentatives of the rank and file, participated in the deliberations, and the edicts were further amended. According to these amendments any beneficiary member of the order is eligible to membership in the executive castle, but only officers thereof, or duly accredited delegates who had participated in at least one meeting of the castle four years prior thereto, were eligible to hold any elective or appointive office therein. None other than executive committeemen who had served as members thereof were eligible to serve as most illustrious protector, chief secretary, or chief treasurer. The executive committee is first described by that name in the 1901 edicts, and is composed of the protector, secretary, treasurer and four high prudential chiefs. The edicts, as amended in 1901, further provide that the delegates to be selected by the rank and file of the order need not exceed the aggregate of officers and committeemen in the executive castle, and the edicts can only be amended by a two-thirds vote of the entire membership of that castle. They also disclose that suicide by a member shall be a complete defense to an action upon his certificate of insurance.

In 1905 defendant's executive castle again convened, and so amended the edicts as to deprive a beneficiary of a member who had committed suicide of all claims upon the order in excess of the aggregate payments made by him for the use of the mortuary fund. It is argued most strenuously that but 11, and not 13, elective officers participated in the 1905 convention, and that the 25 delegates present, by an exercise of their voting franchise, had the power to amend any edict, notwithstanding the combined opposition of all elective officers, and that our opinion is incorrect in these particulars. Our former opinion upon this point reflects the testimony of the chief secretary of the order, and is corroborated by the report of the finance committee concerning the expense of the officers and delegates in attendance in that convention, which shows that mileage and per diem were allowed for 13 officers and 25

56

delegates. Whether counsel are, or their witness is, correct, is not material. The elective and appointive officers, entitled by virtue of the edicts to participate in the deliberations of and to vote for or against the propositions advanced in that convention of the executive castle, owed their positions to the men who incorporated the society, and did not represent the members of the order within the meaning of the statute. Counsel argue with great earnestness and much plausibility that the so-called elective officers are representative, and that the edicts of the order, as amended in 1905, have given the Highlanders a representative form of government. For the purposes of this case we need only consider, and shall only consider, defendant's government as it existed in 1901 and in 1905, when the amendments were made to section 41 of the edicts.

It is true, as urged, that the statute does not define the words "representative form of government," but there should be no great difficulty in coming to an understanding of the law. We said in the case of *State v. Bankers Union of the World*, 71 Neb. 622, speaking through Judge SEDGWICK: "A fraternal beneficial association must have a representative form of government. This requires that the directors or other officers, who have general charge and control of the property and business of the society and the management of its affairs, *shall be chosen by the members.*" In discussing this phase of the case Judge SEDGWICK stated: "These directors, who control the affairs of the company, must be chosen by the membership thereof, either directly or through representatives chosen by the membership for that purpose." So it will be understood that representative government does not necessarily mean democratic control in the sense that all of the members shall at a precise time individually express their will in selecting the officers and agents essential for the management of the affairs of the order, but it does imply supreme and ultimate sovereignty in the individuals constituting the units of the society. One may

imagine the reception that would have been accorded the
constitution of the United States, or the fundamental law
of this state, had the men who framed those documents
inserted a clause therein that the people should be rep-
resented in the various branches of the government, pro-
vided they selected their representatives, or a large frac-
tion thereof, from the membership of the constitutional
convention.  After a mature consideration of the record,
we have no hesitation in reaffirming our former opinion
in so far as it determines that in 1901, and at the time
in 1905 when section 41 of defendant's edicts was amended,
defendant did not have a representative form of govern-
ment within the meaning of chapter 47, laws 1897.
Counsel insist that to so hold means the dismemberment
and destruction of a flourishing order, but we are unable
to agree with them.  The association was lawful in its in-
ception, and its by-laws designated the agents and
methods whereby all needful changes might be made in
its edicts.  Twice, in the absence of statutory limitations,
that power has been exercised.  Section 8, ch. 47, *supra*
(Ann. St. 1909, sec. 6642), authorized defendant to con-
tinue in business, provided it complied with the statute.
If it desired to continue as a going concern and receive
the protection of the law, its officers should have con-
vened the executive castle, and the officers, committee-
men and delegates composing that castle by a two-thirds
vote should have altered the edicts so as to clothe defend-
ant with a representative form of government.  Section
6656, Ann. St. 1909, directs that amendments made to the
constitution or by-laws of a fraternal insurance society
shall not take effect until a duly certified copy of the
amendments shall have been filed with the auditor of
public accounts.  We still hold that an amendment to de-
fendant's edicts clothing it with a representative form of
government must be duly certified and filed with the
auditor before representatives selected under that govern-
ment may lawfully amend its edicts with respect to a bene-
ficiary's rights.

Counsel's criticism of the third paragraph of the syllabus is not well founded. We do not thereby hold that defendant's executive castle, as constituted in 1897, could not or cannot lawfully amend the edicts of the Royal Highlanders so to give it a representative form of government.

The motion for a rehearing is

OVERRULED.

SEDGWICK, J., not sitting.