G. ROBERT HEWSON ET AL., APPELLEES, V. ROYAL HIGHLANDERS, APPELLANT.

FILED FEBRUARY 26, 1915. No. 17,980.

Insurance: FRATERNAL INSURANCE: SUICIDE CLAUSE. A provision against liability in case of death by suicide, contained in the application and certificate of membership in a fraternal beneficiary association, though not expressly authorized by its by-laws, is a binding part of the contract of insurance, if not in violation of the articles of organization of the association or of the statute under which it is organized.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed with directions.*

*Hainer & Craft,* for appellant.

*George W. Berge, contra.*

FAWCETT, J.

On February 12, 1906, C. Clarence Hewson became a member of defendant association, and obtained from defendant a certificate of membership, designated in the petition as a policy of insurance, for $2,000, in which certificate the plaintiffs, who are minors and bring this action by their next friend, were named as beneficiaries. On April 23, 1911, Mr. Hewson died by his own hand. That he committed suicide is conceded. The defendant denied liability for the $2,000 death claim, and offered to pay to the beneficiaries an amount equal to the sum which the decedent had contributed to the fidelity fund of the association, which aggregated $51.20. The offer was declined by plaintiffs, and this action was commenced in the district court for Lancaster county. At the conclusion of the evidence plaintiffs moved for a directed verdict in their favor for the principal sum named in the certificate, and interest. The defendant moved for a peremptory instruction to the jury to return a verdict in favor of the plaintiffs for the sum of $51.20. The motion of defendant was overruled and that of plaintiffs sustained. In accordance with the direction of the court the jury returned a verdict in favor of the plaintiffs for $2,210, upon which judgment was entered, and defendant appeals.

The briefs on both sides concede that there is no issue of fact presented by the record and that it is for the court to determine the rights of the parties. The decedent's application for membership in defendant association was a partly written and partly printed application. The original is before us. It bears date January 18, 1906. The original certificate of membership is also before us. It bears date February 21, 1906. The application contains this agreement: "I also agree that should I commit suicide after my admission into the Fraternity, whether sane or insane, that this contract shall be null and void and of no binding force upon said executive castle; except that I agree that all payments made by me which have been

placed in the fidelity fund shall be accepted in full payment of all benefits to my beneficiary or beneficiaries, and that payment of same by the Royal Highlanders shall cancel all claims whatsoever." The evidence shows that the application correctly sets out the answers given by the decedent, and that he knew the contents of the application which he was signing. The benefit certificate recites: "That in case of the suicide of the member, either sane or insane, the amount of all contributions of the member to the fidelity fund of the fraternity only shall be paid to the beneficiary named in this certificate. * * * Both the edicts and application are made a part of this certificate."

We start out with the fact, alleged in the petition and admitted in the answer, that at all of the times in controversy defendant was a fraternal beneficiary association, organized and existing under and by virtue of the laws of this state, and doing business as such. This being true, defendant was authorized to enter into lawful contracts of membership with applicants applying therefor. At the time the decedent applied for admission to membership and received his benefit certificate the defendant had a complete set of published edicts, commonly designated in other societies as by-laws. Prior to 1901 the edicts were silent on the subject of suicide. In that year the executive castle amended them so as to provide exemption from liability in such cases. This exemption was retained in the amendment of 1905. The application and certificate were prepared in accordance with the edicts as thus amended, and, so far as the evidence shows, were thereafter exclusively used in admitting new members. Plaintiffs insist that in a fraternal society the certificate is not the contract; that the constitution of the society, its by-laws and the certificate constitute the contract. They also contend that the edicts of 1901 and 1905 were not legally adopted, and cite *Lange v. Royal Highlanders,* 75 Neb. 188, and *Briggs v. Royal Highlanders,* 84 Neb. 834, in support of their contention. It is true that in those cases we held that in adopting the edicts of 1901 and 1905 the

executive castle which adopted them was not a representative body, and as so constituted the defendant did not have a representative form of government, and for that reason we held that the edicts then adopted could not be invoked to defeat a recovery by the beneficiaries of one who had committed suicide, under a certificate issued prior to the abortive attempt to change the edicts of the society; but we did not hold in either of those cases that the association was not legally transacting business. On the contrary, in the *Lange* case on rehearing, 75 Neb. 199, we said: "It must be conceded that the defendant, by filing its articles of incorporation in compliance with the law in force at the time of its organization, acquired the right to carry on the business for which it was created." Nor did we hold in either of those cases that if the case then under consideration had been based upon a certificate which itself recited that the defendant should not be liable in the event of suicide, and the application upon which the certificate was issued also expressly stipulated that there should be no liability in case of suicide, the defendant would have been liable notwithstanding such stipulations. On the contrary, in the *Briggs* case, p. 841, in the concluding sentence of the opinion we said: "There being nothing in the certificate of membership issued to the assured, or in the edicts and by-laws of the defendant as they existed at the time he was admitted into membership and received his certificate, which exempted the defendant from liability in the event of suicide, we must hold that the judgment of the distric court was right"—and affirmed the judgment which had been entered in favor of the plaintiff.

As we have said, the edicts in force prior to the amendments of 1901 and 1905 were silent on the subject of suicide; and if the certificate issued to Mr. Hewson had also been silent on that subject, then under the authority of the *Lange* and *Briggs* cases the defendant would be liable. But here the benefit certificate itself, as well as the application upon which it was based, both expressly provided that in the event of suicide the defendant should not be liable. The question, therefore, to be decided is, could the

defendant make such a contract with applicants for membership? There is nothing in the statute which forbids the making of such a contract, nor is there anything in the edicts as they existed prior to the amendment of 1901 which forbids it. The contract is a reasonable one—one in the interest of the membership of the association. And if the defendant, in the regular course of its business, concluded that it would not longer continue to assume the risk of suicide, and inserted in the application to be signed by all persons subsequently applying for membership, and in all of its benefit certificates to be subsequently issued, an express agreement that the defendant should not be liable for death by suicide, we are unable to see any just theory upon which it should be held that such a contract is not lawful and entitled to be enforced as made. An applicant for membership knows when he signs his application that that is an important condition of his admission into the society. If he voluntarily signs the application and therein agrees to such condition and accepts the benefit certificate issued thereon and containing the same condition, we must enforce the contract as made. To do otherwise would be to make a new contract for the parties and give to the applicant, for the benefit of his beneficiaries, a contract which the association itself would not have entered into. This we must decline to do. *McCoy v. Northwestern Mutual Relief Ass'n*, 92 Wis. 577, is squarely in point, and cites numerous cases in its support. Taking the certificate and the application together, it is clear that the defendant never in any manner agreed to pay for the death of Mr. Hewson if caused by his own hand. Its only agreement with him, in the event of suicide, was to pay to the beneficiaries named in the certificate the money which, at the time of his death, the decedent had contributed to the fidelity fund of the association. This amount it offered to pay, and its motion at the close of the trial, to direct a verdict for the plaintiffs for that amount, should have been sustained.

The judgment of the district court is therefore reversed and the cause remanded, with directions to enter judg-

ment in favor of the plaintiffs, in accordance with the terms of defendant's motion entered at the close of the former trial.

REVERSED.

MORRISSEY, C. J., not sitting.

ROSE, J., dissents.