WILLIAM WIDENER ET AL., APPELLANTS, v. W. E. SHARP ET AL., APPELLEES.

FILED JANUARY 15, 1924. No. 22743.

1. Insurance: FRATERNAL BENEFICIARY ASSOCIATIONS: FORM OF GOVERNMENT. A fraternal beneficiary association is required by the laws of this state to have a representative form of government as thereby defined. *Held*, that a lodge system with local lodges that elect delegates to representative lodges, which in turn elect delegates to a supreme lodge where such delegates are the possessors of the entire voting power, complies with the statute.

2. ———: ———: SELECTION OF REPRESENTATIVES. An edict which requires delegates to the supreme lodge to be selected by the representative lodge from the members of that lodge present at the session electing them is not unduly restrictive nor contrary to the representative principle.

3. ———: ———: REPRESENTATIVE DISTRICTS. Where the prin-

Widener v. Sharp.

ciples upon which the districting is to be accomplished are stated in the edict, the fixing of the boundaries of representative districts in accordance with such principles may be delegated to an executive committee.

4. ———: ———: SELECTION OF REPRESENTATIVES. Restricting to a certain class the selection of delegates to a representative lodge is not unreasonable, where the selection of persons composing such class is within the control of the members.

5. ———: ———: ———: APPOINTMENT TO FILL VACANCY. The power of appointment of a delegate to the supreme lodge, upon a failure of a representative lodge to elect, is properly lodged in the illustrious protector.

6. ———: ———: RATES. The table of rates of assessment examined, and *held* not to be unnecessarily high, nor oppressive, since the rates are not more than sufficient to enable the society to comply with its contracts and obligations.

7. ———: ———: INCREASE OF RATES. Representation made to prospective members by officers and agents of a fraternal benefit association, that their rates of assessment should never be increased, and the fact that the rate of assessment due from the members at the time of their admission to the society was written upon their benefit certificates, does not preclude the legislative body of such organization from thereafter enacting a new table of rates, so long as the new rates are not discriminatory and are not more than is necessary to enable the society to meet all its agreements and obligations to its members.

8. ———: ———: EXPENSES: DISCRIMINATION. Undue discrimination is not shown because a certain percentage of the assessments of all members is taken and applied for the expense of operating the society.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*J. C. McReynolds,* for appellants.

*Hainer & Flansburg* and *O. B. Clark,* contra.

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ., REDICK, District Judge.

REDICK, District Judge.

This is a suit for an injunction. Plaintiffs are members of the Royal Highlanders, a fraternal beneficiary associa-

tion organized under the laws of Nebraska. It is required by statute to have a representative form of government. It has a lodge system with a ritualistic form of work. Its lodges are called "castles" and its laws "edicts." Its law-making body meets in regular session quadrennially. It raises funds to pay benefits and expenses by requiring members to pay assessments and dues. Defendants are its principal administrative officers and its executive committee. The purpose of the suit was originally to perpetually enjoin defendants from enforcing a new table of rates adopted by the supreme legislative and governing body of the association at a special session held at Denver in October, 1919. The case was tried in the district court for Lancaster county and resulted in a decree dismissing the suit for want of equity, and upon appeal to this court the judgment was reversed and remanded, with directions that the injunction be made perpetual. *Widener v. Sharp,* 106 Neb. 654. The only point, however, decided in that case was that the laws of the society did not provide for special meetings of the supreme governing body, called the executive castle, and, therefore, the October, 1919, meeting, being special, had no authority to transact business.

Subsequently, in September, 1921, a regular meeting duly called was held at Denver, at which the new rates attempted to be established at the special meeting were approved and reenacted. Thereupon leave was granted to file supplementary pleadings, in which the new rates as established in September, 1921, are alleged to be void. On the issues raised by the pleadings the case was tried to the court, resulting in a decree again dismissing the case, from which decree plaintiffs appeal.

The objections to the assessments are presented under four heads: (1) That the Royal Highlanders have not a representative form of government. (2) That the rates adopted are unnecessarily high, oppressive, unjust, illegal, and discriminatory. (3) That the proportion of the monthly assessments set aside for the purpose of paying the expenses of the order is grossly excessive and discriminatory.

(4) That such rates are retroactive and discriminatory as between the various ages and classes of membership.

We will take up the first proposition, and at the outset it will be useful to take a general survey of the form of government established and provided by the laws or edicts of the society. The supreme governing body is called the "executive castle," composed of 15 officers and 25 delegates elected by representative castles; delegates to which are in turn elected by tributary castles. While the officers are members of the executive castle, the voting power (since the *Lange* and *Briggs* cases, cited later) is vested solely in the elected delegates, and this was true at the commencement of this suit. Delegates to the representative castle were elected by the full membership of the order at meetings of the tributary castles (corresponding to local lodges).

It thus appears that every member of the society had a voice in the selection of delegates to the representative castle, which in turn, representing the voter, selected the delegates to the executive castle. It is not seriously contended that a society so constituted is not possessed of a representative form of government within the definition of section 3294, Rev. St. 1913, as follows:

"A 'fraternal beneficiary society' is hereby declared to be a corporation, society or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit. Each such society shall have a lodge system, with ritualistic form of work and representative form of government. Any such society shall be deemed to have a representative form of government when it shall provide in its constitution and laws for a supreme legislative or governing body composed of representatives elected either by the members, or by delegates elected directly or indirectly by the members, together with such other members as may be prescribed by its constitution and laws: *Provided,* the elected members shall have not less than nine-tenths of the vote, nor less than the votes required to amend its constitution and laws; and *provided, further,* the meetings of the supreme or

governing body and election of officers, representatives or delegates, shall be held as often as once in four years."

It is true that defendants, the principal administrative officers and the executive committee, have a voice in the proceedings of the executive castle, but their right to be heard there is permitted by statute. They are familiar with the business and the conditions of the fraternity and are the custodians of records and data essential to consideration of proposed legislation. The restriction of the voting power to the elected delegates obviated the objections, based upon the composition of the executive castle, which were discussed in *Lange v. Royal Highlanders,* 75 Neb. 188, and *Briggs v. Royal Highlanders,* 84 Neb. 834, and 85 Neb. 830, because at the time those decisions were rendered the edicts of the society permitted the nonelected officers to vote in the executive castle, and it was upon this ground that we held the society to be without a representative form of government.

Notwithstanding the society had an apparent representative form of government, as we have shown above, the plaintiffs insist that it is only in form, and that the provisions of the edicts whereby the title of the elected delegates to the executive castle may be traced to the votes of the entire membership are rendered nugatory, or nullified, by certain other edicts of the society which in effect deprive the member of any substantial participation in the selection of delegates to the representative castle, and, consequently, of the delegates to the executive castle, and prevent the establishment of a representaitve form of government in fact. The edicts attacked are:

"Section 197. When Executive Committee May Amend. During the interim between sessions of the executive castle, should any cause arise for an immediate change of some edict or the adoption of a new edict be found necessary, the executive committee may enact such edict or amendment by a two-thirds vote of all members. Such edict or amendment shall be binding and in full force and effect as soon as approved and published, and shall remain an edict until

the next session of the executive castle, when, if approved by a majority vote of all members present and entitled to vote, the same shall become a permanent edict of our fraternity."

"Section 63. When Instituted. At the second regular meeting of the executive committee in the year during which any regular session of the executive castle is to be convened, the chief secretary shall submit a statement containing the name, number and location of every tributary castle of the Royal Highlanders, which statement shall show the number of beneficial members in good standing in each tributary castle, as shown by the records of his office, on the first day of January of such year. From this statement the executive committee shall divide the entire jurisdiction of the fraternity into twenty-five or more districts, as nearly as possible of equal membership. These districts shall be arranged with regard to geographical location of the tributary castles therein, with the aim in view to make each district as compact as may be consistent with transportation facilities. The executive committee shall also designate a place and time for holding each district meeting, which must be during the months of May, June, July and August of the same year. When these districts shall be established the chief secretary shall notify each tributary castle of the fraternity to which district convention it shall send its representatives. Each district convention shall be known as a representative castle of the Royal Highlanders."

"Section 176. Eligibility to Election as Representative. Only beneficial members in good standing who have filled the position of illustrious protector, secretary-treasurer or counselor of a tributary castle, for at least three months, and have not resigned, or had their office declared vacant, shall be eligible to be elected as representatives or alternates to representative castles: *Provided,* that in case of the election in a new tributary castle, organized within three months of January 1st of the year in which a representative castle convenes, these officers shall be eligible although they

have not served three months. Any member of the executive castle shall be eligible as a representative."

"Section 64. How Composed. The representative castle shall be composed of the representatives from the tributary castles located within its jurisdiction and the officers of the executive castle residing therein."

"Section 66. Eligibility as Representative to the Executive Castle. Representatives or alternates thus elected shall be elected from the members present at the session of the representative castle electing them."

"Section 69. Officers. Any executive officer of the executive castle present and ranking in the order named in section 22 of these edicts shall be the ex-officio chairman of the representative castle."

"Section 70. Quorum. Three representatives shall constitute a quorum in a representative castle."

"Section 71. Failure to Convene. In case any representative castle should fail to elect a representative and alternate for lack of a quorum or otherwise, the most illustrious protector shall appoint an eligible member of such representative district to represent such representative castle in the convention of the executive castle."

"Section 173. Manner of Election. The following shall be the manner of electing representatives from tributary castles to represent such castles at the representative castle:

"During the month of March of each year in which a regular session of the executive castle is to be convened, the chief secretary shall send a statement to each tributary castle secretary-treasurer entitled to representation in a representative castle, which statement shall show the number of members in good standing January 1, of such year, in such castle. At the first regular meeting of the castle, after receipt of this statement, each tributary castle shall elect by ballot one eligible beneficial member to represent the castle at such representative castle, and an additional eligible beneficiary member for each additional hundred members, or major portion thereof, after the first hundred shown to have been in good standing January 1, of such year."

"Section 19. , Eligibility to Office. Any officer of the executive castle in good standing and representatives from the representative castles, whose credentials shall have been approved by the executive castle, and who have been members of the executive castle, and participated in at least one former session of the same, shall be eligible to hold any elective or appointive office of the executive castle, except the position of most illustrious protector, chief secretary, and chief treasurer. Only members of the executive castle who have served as members of the executive committee shall be eligible to be elected to the office of most illustrious protector, chief secretary, or chief treasurer."

The above sections are quoted in the order in which they appear in the brief of appellant, but our discussion of them will pursue a different order, as a number of them may be disposed of without extended consideration.

We begin with section 197. This deals with an attempted delegation of power to the executive committee to amend the edict, but whether valid or not, we are unable to perceive what connection there is between the performance of duties by the executive officers and the manner of their selection, which is the material consideration upon the question now under discussion. If this section is invalid, the courts may restrain the enforcement of any edict promulgated under it, but the question has not yet arisen.

Section 176 has to do with the eligibility of delegates to the representative castles. The claim here is that the right of the member to vote for the delegate is unduly restricted; but it is common knowledge that in all representative governments certain qualifications for office may be prescribed, which may exclude a good proportion of the voters. For example, no one may be elected congressman who has not attained the age of 25 years, and been a resident of the United States 7 years, and no one may be a senator of the United States unless he has attained the age of 30 years, and been a resident of the country for 9 years. So the restriction may be to certain classes, as, for instance, none may be elected as judge of the district or supreme courts of this state without

he be regularly admitted as an attorney at law. We need not pursue this subject further, but dismiss it with the observation that, while the selection of delegates is restricted to certain officers and ex-officers of the tributary castle, the members have full power to change such officers, and when selecting them they in effect select the class from which delegates are taken later on; full control is thus found to exist in the membership. A further contention is that this section makes eligible as a representative any member of the executive castle; but the context clearly implies that the candidate must be a member of the tributary lodge and must be elected thereby.

Section 63 confers upon the executive committee the power to divide the entire jurisdiction of the fraternity into 25 or more districts, and it is claimed that this was an unlawful delegation of legislative power by the executive castle. It is undoubtedly true that legislative power is vested in the executive castle and must be exercised by it; but the question before the representative bodies in the enactment of the law is whether or not the proposed law should be enacted in the judgment of the legislature. The legislature exercises its judgment and discretion, and, in accordance therewith, enacts the law, and, having done so, it may delegate to executive or administrative bodies authority and discretion to be exercised in the execution of the law. In *State v. Chittenden,* 127 Wis. 468, it was held:

"Authority which, by the Constitution, is vested in the legislature, is the power to make law. It may be exercised, leaving in the particular instance to some other agency the duty of determining questions of fact essential to the application thereof. The former involves legislative, the latter administrative discretion."

And, quoting from *Cincinnati W. & Z. Ry. v. Clinton County,* 1 Ohio St. 77, 88:

"The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and

in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

By section 63, in question, the executive castle in its legislative capacity decided that the jurisdiction should be divided into districts "as nearly as possible of equal membership. These districts shall be arranged with regard to geographical location of the tributary castles therein, with the aim in view to make each district as compact as may be consistent with transportation facilities." The executive castle having determined the principles upon which the division of the jurisdiction into districts should be accomplished, it was entirely competent to provide that the actual boundaries of the districts might be determined by the executive committee, acting, of course, in accordance with the principles laid down, and that in so doing they were performing merely administrative duties. The distribution of the membership and the transportation facilities were matters subject to change over comparatively short periods of time, and it would be impractical to attempt by a general law to anticipate these changes, and it was quite appropriate to vest in some other body administrative discretion in the execution of the law. The fact that these districts were to be marked by a committee " which had been selected by the unrepresentative body," as remarked in the *Briggs* case, 84 Neb: 834, 838, is not material to the question of delegation of power; and we are not disposed to ascribe to such fact an importance which might result in leaving the society with no adequate method of selecting an executive castle to take necessary steps to bring the society within the law; moreover, this feature will disappear when such action is taken.

Section 69, providing that an elective officer of the executive castle shall preside over the representative castle, does not seem to be inconsistent with representative form of government; the vice-president of the United States, an elective officer, presides over the deliberations of the senate, and it has never been contended, as far as we are informed,

that any principle of representative government was thereby violated.

Section 173. The objection to this edict is that no time is fixed in which notice shall be transmitted before the regular meeting at which tributary castles shall elect a representative, and it is argued that the chief secretary might withhold the notice until one minute before the convening of the tributary castle, and then deliver it to the secretary-treasurer of the castle, or withhold it, accordingly as it should appear that the members present would elect a representative agreeable to the executive castle, or the reverse. We do not think, that, for the purpose of declaring this edict void, we are justified in presuming that officers of the association charged with the performance of certain duties will act dishonestly or fraudulently. A proper construction of the edict in question requires that the notice be sent within a reasonable time before the meeting at which the election is to be held; and, if any such conduct as suggested were attempted, the courts would furnish ample protection to the members.

Section 19, prescribing qualifications for officers of the executive castle, is not unduly restrictive for reasons similar to those referred to in the discussion of section 176.

Section 70 will probably bear the construction contended for by defendant, that the word " representative " refers to those elected; but this question is not now important.

Section 71. This provision for the appointment by the illustrious protector of a representative in case of failure of an election is consonant with correct principles, and a corresponding provision is to be found in the statutes or Constitutions of all the states; without some such provision the district would be without representation in the executive castle.

There is nothing in what we have thus far said which is inconsistent with the decision of this court in *Briggs v. Royal Highlanders*, 85 Neb. 830, 834, as was there said:

" It will be understood that representative government does not necessarily mean democratic control in the sense

that all the members shall at a precise time individually express their will in selecting the officers and agents essential for the management of the affairs of the order, but it does imply supreme and ultimate sovereignty in the individuals constituting the units of the society."

These requisites are met, as expressly provided for by statute, when its constitution and laws provide "for a supreme legislative or governing body composed of representatives elected either by the members, or by delegates elected directly or indirectly by the members." Rev. St. 1913, sec. 3294.

While the decision of the matters just discussed is not absolutely essential to the disposition of this case, we have expressed our opinion regarding them, in view of the number of cases brought to this court presenting similar considerations as touching the form of government of various fraternal organizations, with a view to the settlement of some of these questions and a discouragement of fruitless litigation, expensive and disturbing to those societies and their members alike. The enactment of invalid edicts not interfering with the ultimate control of the society by the vote of its members, while subject to inquiry and relief by the courts, does not in any sense strip the organization of its legal character by destroying its representative form of government, if it has one.

The remaining edicts to which objection is made in connection with the first proposition are 64 and 66 and may be considered together. The first point requiring consideration is that by section 64 representative castles are composed, not only of delegates elected by the members, but officers of the executive castle residing within the jurisdiction of the representative castle.

Counsel for plaintiffs argue that said section confers the right to vote in the representative castle, upon officers of the executive castle residing in the jurisdiction of the representative castle, and that the delegates to the executive castle are not, therefore, elected either by the members of the society or their representatives, but that such delegates

are elected by a body composed only in part of the representatives of the members of the society. We do not think the contention is well founded. The argument is persuasive, and would be entitled to great weight if this were a direct proceeding by the state, involving the vital question of the right of the society to do business; but here the contest is between a member and the society, and the question in a sense arises collaterally, and our decision should not extend beyond the full protection of the rights of the plaintiffs and other members. The power of a legal body, when necessary, to increase rates within reasonable bounds cannot be disputed, and if *in fact* the acting body has been selected in accordance with the representative principle, we would not feel justified in adopting a doubtful construction of this edict which, in the end, would result only in the postponement of lawful action, and thereby imperil the ultimate value of all outstanding certificates of the society. Section 64 does not, in terms, give a vote in the representative castle to officers of the executive castle. The record shows that the chief officers of the society have always construed the section as denying the voting privilege to executive castle officers, except where they were regularly elected by a tributary castle as delegates to the representative castle; that such privilege has never been exercised; and that the elective members of the executive castle, which adopted the increased rates, were selected by the elected members exclusively of the tributary castles, the resident members of the executive castle not voting. More recently an edict has been adopted which, in express terms, withholds from executive castle officers, residing in the jurisdiction of a representative castle, the power to vote therein unless regularly elected members thereof. In addition, section 192 of the edicts makes the laws of Nebraska, relating to fraternal beneficiary associations, a part of the society's edicts, and further provides that such statutes shall, in all respects, control, and that any edict or part of an edict, in conflict therewith, shall be null and void. Under this state of facts, we are clearly of the opinion that section 64 should not be construed to give a

voting power in the representative castle to those executive castle officers who may be residing in its jurisdiction. It is a cardinal rule that, where a by-law of a society is susceptible to two constructions, the one making it a valid law and the other invalid, the former is to be preferred.

Section 66 is severely criticised because it restricts the representative castle to its own membership in the selection of delegates to the executive castle. But it must be remembered that the members of the tributary castle are aware, when they select their delegates to the representative castle, that the membership of the executive castle must be made up from the delegates to the representative castle. The same reason that applies to the restricted list of members who are eligible as delegates to the representative castle, is likewise applicable to the restricted list of eligible delegates to the executive castle.

The record shows that the representatives to the executive castle of 1921 were selected by the representatives to the representative castle who were, in turn, selected by the members of the society. The edict, changing the rates, was enacted by a body that was representative in character. It does not appear that the society did not have a representative form of government when the edict was adopted.

Plaintiffs strenuously contend that the new table of rates is unnecesarily high and oppressive, and is therefore illegal. The record discloses that the rates are not more than sufficient to enable the society to comply with its contracts. When the members of fraternal beneficiary societies undertake to conduct their business on inadequate rates for insurance, they sooner or later find it necessary to raise the rates to a point somewhat higher than what would have been an adequate rate in the first instance, or the alternative of insolvency and failure. We are satisfied that the new table of rates is not unreasonably high.

Counsel for plaintiffs argue that the society cannot change its rates of assessment, by reason of representations made to prospective members by officers and agents of the society, and because the rate of assessments due from the

members was written upon their certificates. It is obvious that such facts and representations could not bind the society, nor prevent the members in their legislative body from enacting a new table of rates, so long as the new rates were not discriminatory and were not more than was necessary to enable the society to meet all its agreements and obligations to its members. *Case v. Supreme Tribe of Ben Hur,* 106 Neb. 220; *Fowler v. Sovereign Camp, W. O. W.,* 106 Neb. 192.

Plaintiffs complain that the new rates are discriminatory, because a certain percentage of the monthly assessments was diverted to the general fund and used for expenses, and, since the older members pay a larger assessment, they are required to pay an undue proportion of the costs of running the society. The older members will pay, ordinarily, for a shorter time, as their expectancy is less, so, while they pay more from each assessment, they make correspondingly fewer payments. The precise question was decided by the court in *Fowler v. Sovereign Camp, W. O. W., supra.*

We find no reversible error, and the judgment of the district court is

AFFIRMED.