ROBERT F. MUNCH ET AL., APPELLEES, V. ANTON J. TUSA
ET AL., APPELLANTS.

300 N. W. 385

FILED OCTOBER 17, 1941.   No. 31122.

*Harold C. Linahan, W. W. Wenstrand, Edward Sklenicka*
and *Thomas C. Quinlan,* for appellants.

*Kennedy, Holland, DeLacy & Svoboda, contra.*

*Rosewater, Mecham, Shackelford & Stoehr, Bernard S.
Gradwohl, Clarence G. Miles* and *Peterson & Devoe,* amici
curiæ.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PER CURIAM.*

This is an injunction proceeding to enjoin the election commissioner of Douglas county and other defendants from placing upon the ballot at the election held November 5, 1940, a proposal to amend the home rule charter of the city of Omaha.

Plaintiff alleges: Since 1909 the statutes of Nebraska have provided for a police relief and pension fund and have designated the sources of revenue to maintain the fund. Laws 1909, ch. 15. The present law has been in effect since 1921. Laws 1921, ch. 116, art. V, sec. 10 *et seq.* The law is pursuant to statute and is a part of the home rule charter of the city. Comp. St. 1929, secs. 14-610 to 14-619, inclusive. The statute provides for sources of revenue for the pension fund and further provides that the city council shall constitute a board of trustees for the pension fund; that the city treasurer shall be *ex officio* treasurer and custodian of the fund. The members of the police force are authorized by statute to make such rules and regulations, as to disbursements of the fund, as they may deem proper, such rules and regulations to be approved by the city council. They are required to elect annually a board of directors, to whom is entrusted the management of the fund and its disbursements, subject to the approval of the city council.

Section 14-612, Comp. St. 1929, which constitutes a part of the Omaha charter, provides that the directors shall invest the fund from time to time, subject to the approval of the city council, and section 14-611 provides for gifts to' the fund; section 14-613 for pensions for retired police officers; section 14-614 for pensions for disabled policemen;

*The portions of the opinion reflected by syllabus points Nos. 1, 2, 3, 4 and 5, prepared by Messmore, J. That portion of the opinion reflected by syllabus point No. 6 prepared by Eberly, J.

and section 14-619, Comp. St. 1929, also a part of the Omaha charter, is pleaded on the theory that all moneys, securities and effects of the relief and pension fund are payable from such fund, and the section exempts the fund from execution. The foregoing sections of the statute will be referred to in the opinion as occasion requires. The petition alleges that the existing police relief and pension fund, amounting to $430,000, belongs to the police department and members thereof, from the contributions made to it as provided by statute.

In September, 1940, there was introduced in the city council a proposal to amend the city charter by ordinance No. 14847, providing for certain changes in the statutory contract, designated "Police Department." Comp. St. 1929, ch. 14, art. 6. The changes proposed will be hereinafter set out. The city council passed the ordinance September 28, 1940, with the intention of having the proposal placed on the general election ballot November 5, 1940. The object was to place the firemen and policemen of the city on the same pension basis.

The petition alleges that the proposed ordinance constitutes a dual proposition, to revise both police and firemen's pensions, and is invalid as an impairment of the rights of the plaintiffs to have their cause submitted separately. Other matters pleaded need not be set out, but will be dealt with as occasion requires. The petition prays for an injunction. The answer alleges that the city council introduced, by ordinance, a proposal to provide a comprehensive and uniform system of pensions for members of the fire and police departments, pursuant to sections 4 and 5, art. XI of the Constitution, relating to home rule charters; that the proper procedure was followed to place the proposal on the ballot; denies that the proposed charter amendment would make the police relief and pension fund a part of the general fund of the city; denies generally other allegations of the petition, and prays dismissal of plaintiffs' action. The action resulted finally in the granting of a permanent injunction by the court on

October 26, 1940. From this judgment, defendants appeal.

The ordinance to amend the Omaha city charter in part reads:

"To amend Section 10 of Article V of said Charter, also known as Section 14-610, Compiled Statutes of Nebraska for 1929. * * *

"Sec. 10. Police relief and Pension fund.—In all cities in the State of Nebraska of the metropolitan class there shall be paid to the treasurer thereof, and by him and the comptroller set apart the following moneys, to constitute a police relief and pension fund * * *." The section then designates the sources from which moneys are to be obtained or contributed, to be placed in this fund. To enumerate them would unnecessarily lengthen this opinion.

The proposed amendment to section 10, art. V, ch. 116, Laws 1921, of the city charter, requires moneys so contributed or received from contributions and other sources, as designated in section 14-610, Comp. St. 1929, to be paid to the city treasurer; makes other and further recommendations not necessary to state; repeals section 18, art. V, ch. 116, Laws 1921, of the city charter, known as section 14-618, Comp. St. 1929, which section provides that when a member of the police department dies, leaving a widow and orphans, they may receive a pension as stated therein; and adds an article to said chapter, to be known as article VIIA, sections numbered 1 to 15. The term "departments," as used in the article, means the regularly constituted fire and police departments of the city, and "department" means either thereof, as the context shall indicate. To summarize: The years of service required for a pension are increased from 20 to 25 years; the age limit before a pension may be obtained is increased from 50 to 55 years; and the amount of pension is changed from one-half pay to $70 a month for all ranks and grades. Previously, as provided by section 14-613, *supra,* a policeman received a pension of not less than $50 a month at age 50, and a pension equal to half of his salary at time of retirement.

Section 14-702, Comp. St. 1929, also a part of the Omaha

charter under article 7, entitled "Fire Department," provides for firemen's pensions on retirement after service of 21 years, and pension granted to be not less than $50 a month and to be 50 per cent. of the amount of salary a retiring fireman shall be receiving at the time he goes on the pension roll.

The proposed amendment fixes and changes the amount to be received by the widow of a deceased member of the department and minor children of such deceased member, in the event the widow dies, dependent upon the number of children; likewise fixes the amount of pension to be paid to the widow of an active member of the department who dies as the result of injuries received in the line of duty, so long as such widow remains unmarried, and provides that she shall not receive more than $70 a month, with a forfeiture of all such rights to pension if she should remarry. The proposed amendment incorporates and applies the workmen's compensation law, excluding medical, hospital or burial expenses, to any member of the department entitled to benefits under such act. This latter provision is not in the present law, and reference is made to lump sum settlements made under the compensation law and their application to the pension toward the amount of pension received.

Section 8, art. VIIA, of the proposed amendment provides: "This Act shall apply to all members of the Department of the City of Omaha who are members at the time this Act becomes effective or who are thereafter appointed, except such members who are eligible to retire, at the time this act becomes effective, under the provisions of section 13 of article V, or section 2 of article VI of the city charter of Omaha, but who have not retired, under either of the foregoing charter provisions." The proposed act applies to all members of the department except those who are eligible to retire and those who have retired, as provided by the former act, and in no way infringes upon or impairs any rights that such persons may have under the former act during the existence of the fund.

Under the proposed amendment, the present fund will be used to pay those entitled to the benefits thereunder, and to pay the relief and pensions, as contemplated by the amendment; thereafter such relief and pensions shall be paid from taxation. The amendment provides that members of the department shall contribute to the city general fund 3 per cent. of their monthly salary, in return for the pension benefits granted by the proposed amendment. The administration of the fund is vested with the city council.

The proposed ordinance, proper in form, submitted to the electorate the amendments contemplated, and submitted the question: Shall the charter of the city of Omaha be so amended; requiring a vote of approval or disapproval of the ordinance? The city followed the procedure to amend its charter, as required by sections 4 and 5, art. XI of the Constitution. Under the circumstances, it is not necessary to discuss this proposition, except to say that ample authority exists to submit the proposal to amend the city charter.

The court found that the proposal to be submitted contains a dual proposition which would vitiate the purpose of the amendment. The proposal includes both the police pension fund (Comp. St. 1929, ch. 14, art. 6) and the firemen's pension fund (Comp. St. 1929, ch. 14, art. 7). The contention is made that the dual proposition consists of the difference in the pensions, in that the firemen received a much higher rate of pension than the policemen. The present law provides that a policeman may retire at age 50 and a fireman after 21 years of service. The ordinary policeman retires on a pension of $70 a month; the ordinary fireman on a pension of $90 a month. The maximum pension for a policeman's widow is $70 a month, while that for a fireman's widow ranges from $90 to $187. The firemen's relief and pensions are paid by taxation; those of the policemen from the fund here under discussion. Figures are cited to show the cost of the fire department's pensions for the past year to be much larger than was paid out from the policemen's fund. The con-

tention is that prejudice would prevail in the exercise of voting on the proposed amendment, in that voters may be satisfied with the policemen's present relief and pension law, while they may- not be satisfied with the firemen's pension as it now stands. The voter would, therefore, be compelled to vote against the pension plan he favored in order to defeat the plan that he did not favor.

In 11 Am. Jur. 635, sec. 31, it is said: "The rule has been laid down that a constitutional amendment which embraces several subjects, all of which are germane (near or akin) to the general subject of the amendment, will, under such a requirement, be upheld as valid and may be submitted to the people as a single proposition." See *State v. Alderson*, 49 Mont. 387, 142 Pac. 210; *Lang v. City of Cavalier*, 59 N. Dak. 75, 228 N. W. 819; *State v. Wetz*, 40 N. Dak. 299, 168 N. W. 835, 5 A. L. R. 731; Annotation, 94 A. L. R. 1513. In *State v. Wetz, supra*, it was said that the controlling consideration in determining the singleness of an amendment is its singleness of purpose and the relationship of the details to the general subject. See, also, *People v. Sours*, 31 Colo. 369, 74 Pac. 167, 102 Am. St. 34; Annotation, 94 A. L. R. 1512; *People v. Prevost*, 55 Colo. 199, 134 Pac. 129, cited and quoted from in *Kerby v. Luhrs*, 44 Ariz. 208, 36 Pac. (2d) 549, 94 A. L. R. 1502.

The rule followed by a majority of American jurisdictions is to the effect that where the limits of a proposed law, having natural and necessary connection with each other, and, together, are a part of one general subject, the proposal is a single and not a dual proposition.

Reliance is placed by appellees on the case of *Drummond v. City of Columbus*, 136 Neb. 87, 285 N. W. 109. The following constitutes a fair analysis of the holding in that case: The proposal submitted was either or both of two subjects couched in "and/or" language, and could mean that it was a vote on the manner of acquiring an electric light plant, acquiring transmission lines in connection with the existing hydro, or both of these. One who voted in the affirmative would not know whether he.

was voting for one or the other or both, and would not be expressing his own preference, but leaving the ultimate choice to the governing authorities of the city. He would not be expressing any preference at all.

The ordinance under consideration permits the elector to vote for or against a definite proposition; that is, a pension fund plan. He delegates authority to no one to express his choice. By his act he alone decides whether the plan so proposed shall or shall not be adopted and whether the plan so proposed shall or shall not constitute an amendment to the city charter.

The contention is made that the fund in question is a private fund and the moneys provided for therein can be paid out only as provided in the statutory contract creating the fund. *Allen v. City of Omaha,* 136 Neb. 620, 286 N. W. 916, is cited as holding the fund to be not, strictly speaking, a public fund, even though the city treasurer is made the custodian thereof; that the fund could be used lawfully for no other purpose, governmental or otherwise, than that for which it was created and is deposited and held in trust by the city treasurer for the protection of those who, under the terms of the act, may become claimants.

In view of the above holding, it is contended, the statutory safeguards with reference to the fund will be abolished, in that the city will have control of the fund; the fund will not be reinvested, but will be exhausted. The proposed amendment to the city charter merely goes to the form of the statutory contract affecting this fund. The purpose for which it is used is in no manner disturbed. In this connection the case of *State v. Allen,* 128 Neb. 675, 260 N. W. 191, is significant. In that case the city council, by ordinance, changed the salaries or compensation of policemen in the city; that is, the charter was amended. A policeman was reinstated from retirement on an increased compensation, granted by ordinance, and thereby retired on an increased pension. The action of the city council constituted an amendment to the city charter. This court said that the city had a right to so amend its charter. The

foregoing case involved the same provisions of the statute here being considered. Comp. St. 1929, sec. 14-610. One of the contentions in the above case was that the board of directors, appointed by the policemen, had enacted a by-law prohibiting an increase in pensions under the circumstances as herein set out. The answer to such contention was that the action of the board of directors of the fund could not bind the city and that the city council had not approved the by-law enacted. This clearly indicates the city's authority with reference to the fund; that is, the board of directors of the fund is not vested with the power to alter or amend the Omaha charter and can make only such rules and regulations as are consistent with the charter. See 14 C. J. 362; *Briggs v. Royal Highlanders,* 84 Neb. 834, 122 N. W. 69; *State v. Allen, supra.*

With reference to the proposed amendment denying the investment of the fund and exhausting it, reason dictates that the fund cannot last indefinitely. The demands made, or to be made, on it will in time deplete it. The city is ultimately liable. All of the accrued rights of the beneficiaries are protected. The fund is protected. The plan calls for a continuation of relief and pensions for firemen and policemen, with the ultimate liability to be assumed by the city for both. See *State v. Allen, supra.* We see no merit to appellees' contention in this respect. The city, by the proposal, is merely endeavoring to augment the fund and to formulate, in the interests of the policemen and firemen, a pension and relief fund that will endure.

While the appellants contend that equity cannot enjoin a matter which has not taken a concrete form and over which no controversy exists, the answer of the appellees is that the proposition to be submitted was dual in character and would, therefore, come under the rule: To enjoin elections, as set forth in *Solomon v. Fleming,* 34 Neb. 40, 51 N. W. 304, and in 18 Am. Jur. 254, sec. 117, which states: "Most of the courts, while conceding that the holding of elections is a political matter, not ordinarily cognizable by a court of equity, hold that where a proposed

election is to be held on a question * * * and the ordinance or statute under which it is to be held is void, or the election is without apparent authority of law, equity will enjoin the holding. of such election upon the ground of an unlawful expenditure of public funds."

Having found against the appellees' contention that the proposal here involved contains a dual proposition, this is sufficient to dispose of the question. The question with reference to notice and as to whether or not the ordinance had been passed in time has been purposely eliminated as being ineffective. The election was held, the proposal was not on the ballot, and, therefore, the question need not be determined. There is no occasion to determine the question of vested rights, under the circumstances as here presented.

This court does not determine whether the plan proposed by the amendment is the proper and adequate plan. Many elements arise in a metropolitan city with reference to the police and fire departments that require careful consideration in working out a relief and pension plan that may be comprehensive. This court, by the opinion, does not seek to foreclose the right, but recognizes that either the firemen or the policemen may each present a separate plan, as provided in seeking an amendment to the city charter in section 4, art. XI of the Constitution.

The proposition is not raised in the pleadings that pensions of policemen and firemen are not strictly of municipal concern but involve a matter of state concern; that, therefore, an amendment to a city charter should give way to state legislation on the subject, but this proposition is raised by briefs *amici curiæ*. The trial court did not have the opportunity to pass upon the question.

"It is a rule of universal application in appellate proceedings that the examination of the reviewing court, whether on appeal or writ of error, will be confined to questions determined by the trial court." *Coombs v. MacDonald*, 43 Neb. 632, 62 N. W. 41. See, also, *Horbach v. Butler*, 135 Neb. 394, 281 N. W. 804.

However, on this subject, the contention of certain of

the *amici curiæ* appearing in this litigation is that this court in its opinion should protect the many persons who are being paid pensions, and other persons who are in process of accruing the same, under the controlling provisions of the state firemen's pension law. It will necessarily be conceded that we are limited in this consideration to pension rights of firemen in the city of Omaha, a city of the metropolitan class, operating under a home rule charter. The claim thus made involves two indivisible and fundamental contentions: (1) That there is an existing controlling state firemen's pension law applicable to the firemen of the city of Omaha; (2) that policemen's and firemen's pension and relief laws applicable in the city of Omaha are matters of state concern and are not strictly matters of municipal concern, and therefore that the charter provisions, ordinances passed, and regulations adopted by that municipality must be deemed to be subject and subordinate to, and superseded by, the laws of the state upon the same subject. Of course, if it be determined, either, (1) that there is no "state firemen's law" in existence relating to the subject of relief and pensions of Omaha firemen, save its charter as sought to be amended, or, (2) that firemen's relief and pensions under the circumstances of this case are not to be deemed matters of state concern but are strictly matters of municipal concern, the contention of the *amici curiæ* may not be sustained.

It appears that there is no express constitutional provision that is determinative of the matter, but these questions must be adjudicated upon constitutional provisions, and statutory provisions adopted pursuant thereto, in the light of their historical development. In 1920 there was duly adopted as a constitutional amendment section 5, art. XI of the present Constitution. It provides: "The charter of any city having a population of more than one hundred thousand inhabitants may be adopted as the home rule charter of such city by a majority vote of the qualified electors of such city voting upon the question,

and when so adopted may thereafter be changed or amended as provided in section 4 of this article, subject to the Constitution and laws of the state."

The "charter of any city having a population of more than one hundred thousand inhabitants," as employed in the above amendment, obviously referred to the statutory charter prescribed by the legislature, pursuant to which its government had been previously carried on. When the terms of this constitutional amendment were duly accepted by a municipality, the provisions of the statutory charter thereof as theretofore existing became and thereafter continued, "until amended or changed," as a constitutionally granted home rule charter of its government, supreme, definite and certain. "Certain" in this connection is as expressed by the long accepted maxim, "That is sufficiently certain which can be made certain." Broom's Legal Maxims, p. 418.

The history of the situation discloses that in 1921 a revision of the statutory charter prescribed for the government of metropolitan cities was enacted by the legislature of that year, and was approved "with an emergency" on April 20, 1921. This enactment was duly submitted to the electorate of the city of Omaha, pursuant to the terms of the constitutional amendment above quoted, and by them duly accepted or adopted on the 18th day of July, 1922. Thereby this legislative act of 1921 (prescribed for the government of all cities of the metropolitan class in Nebraska), as to the city of Omaha, lost its qualities as a statutory charter or law imposed by the sovereign power of the state, and in lieu thereof, by virtue of an explicit constitutional grant, its terms then existing became a home rule charter created and to be thereafter continued in force at the will of the grantee municipality lawfully expressed, every section of which was expressly made subject to its own lawful amendments. No other legislative charter, as such, was thereafter applicable to Omaha than the law thus adopted. True, this change was accomplished by and through a general reference to the entire legislative act

of 1921 which comprised the statutory charter of Omaha previously existing, but this was effective. *State v. Moorhead,* 100 Neb. 298, 159 N. W. 412; *Richardson v. Kildow,* 116 Neb. 648, 218 N. W. 429; *Sheridan County v. Hand,* 114 Neb. 813, 210 N. W. 273; *In re Wood's Estate,* 31 Ch. D. (Eng.) 607.

Prior to the action taken under sections 4 and 5 of art. XI of the Constitution, here enjoined, relief and pensions for city firemen of Omaha were authorized and provided for only by sections 2, 2½, 3, and 4, art. VI of the home rule charter. Likewise, police relief and pensions were authorized and provided for by sections 10 to 19, art. V of the Omaha home rule charter. The above sections referred to, pertaining to firemen's relief and pensions, were adopted bodily and verbatim by the 1921 legislature from ch. 60, Laws of 1909, which was carried as article III, ch. 23, Rev. St. 1913, and constituted at the time of their reenactment thus made the only lawful existing statutory provisions pertaining to firemen's pensions and relief by metropolitan cities. All provisions previously existing, including all of article III, ch. 23, Rev. St. 1913, so far as applicable to cities of the metropolitan class, were by it superseded and in effect repealed. *Bartlet v. King,* 12 Mass. 537, 7 Am. Dec. 99; *State v. Michaels,* 103 W. Va. 634, 138 S. E. 199; *Van Horn v. State,* 46 Neb. 62, 64 N. W. 365; *State v. Moorhead,* 100 Neb. 298, 159 N. W. 412; *State v. Omaha Elevator Co.,* 75 Neb. 637, 106 N. W. 979; *In re Estate of Berg,* 139 Neb. 99, 296 N. W. 460; 59 C. J. 919-921; *Attorney General v. Merchants & Mechanics Trust Co.,* 246 Mich. 456, 224 N. W. 624; *State v. Peverly,* 2 W. W. Harr. (Del.) 443, 125 Atl. 421; *Jernigan v. Holden,* 34 Fla. 530, 16 So. 413; *State v. Conkling,* 19 Cal. 501; *Jefferson County v. Rose Township,* 283 Pa. St. 126, 129 Atl. 78; *Chicago, N. S. & M. R. Co. v. City of Chicago,* 331 Ill. 360, 163 N. E. 141; *Village of Atwood v. Cincinnati, I. & W. R. Co.,* 316 Ill. 425, 147 N. E. 449; *Culver v. Third Nat. Bank of Chicago,* 64 Ill. 528; *Andrews v. People,* 75 Ill. 605; *People v. Board of Education,* 166 Ill. 388, 46 N.

E. 1099; 25 R. C. L. 924, sec. 175; 1 Lewis' Sutherland, Statutory Construction (2d ed.) 269-272.

It must be conceded that, so far as substance is concerned, the amendatory ordinance adopted by the corporate authorities of Omaha here in suit, for submission to the electorate, is in all respects strictly germane to the provisions of the home rule charter it purposes to amend. We must then determine the limitations of the power of municipal amendment of its adopted charter from the constitutional provisions creating and vesting that power. Substantially the only limitation so created is expressed by the last clause of section 5, art. XI, by the words, "subject to the Constitution and laws of the state." We assume, but do not determine, that thereby it was intended that such proposed amendment should be subject to and not inconsistent with any law existing at the time of its adoption, or whatever law the state legislature might thereafter think fit to enact relating to the subject of the amendment. *Head v. University,* 19 Wall. (U. S.) 526; *City of Westport v. Kansas City,* 103 Mo. 141, 15 S. W. 68; *Ewing v. Hoblitzelle,* 85 Mo. 64.

Obviously, the intended municipal action in the instant case is not within the proscription of the constitutional clause quoted above. There are no applicable limitations of the state Constitution. There is no legislation on the subject so far as the firemen of Omaha are concerned, save and except the provisions of the Omaha home rule charter which the amendatory ordinance purports to amend. Clearly, that to which a complete power of amendment has been constitutionally given cannot operate as a limitation on the constitutional exercise of the power to amend. Outside of the provisions contained in the Omaha charter, there is no statutory provision whatever relating to the subject-matter of the proposed amendment, the adoption of which is enjoined in this proceeding. To construe the terms of the Omaha home rule charter as precluding amendment because of its existence in statutory form is to invalidate the constitutional amendment so providing. The

conclusion is that "laws" which are to be deemed superior to the power of amendment here considered must be limited to such laws to which section 5, art. XI of the Constitution, is inapplicable. In other words, after its due enactment the charter amendment in the instant case becomes, so far as the city of Omaha is concerned, the law covering the subjects to which it relates, and there being no other inconsistent or conflicting applicable statutes, it becomes the clear expression of sovereign intent made, not through express constitutional grant, but by a constitutional agency duly authorized so to do. And furthermore, the sovereignty of the state having refrained from directly expressing its will by applicable statute on the subject here involved in this litigation, we may not, until such expression actually occurs, consider the matter of firemen's relief and pensions defined and regulated by the Omaha charter as "a matter of exclusively state concern."

The injunction granted by the district court for Douglas county is dissolved, and plaintiff's petition is dismissed.

REVERSED AND DISMISSED.