144 N.J. Super. 10 (1976)
364 A.2d 47
DONALD C. YOUNG, PLAINTIFF,
v.
BRENDAN T. BYRNE, GOVERNOR OF THE STATE OF NEW JERSEY. STATE OF NEW JERSEY, NEW JERSEY STATE SENATE, GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY, AND THE CITY OF ATLANTIC CITY, DEFENDANTS. JOSEPH A. LAZAROW, INDIVIDUALLY AND AS CHAIRMAN, AND FRANK J. SIRACUSA, INDIVIDUALLY AND AS TREASURER OF, AND THE COMMITTEE TO REBUILD ATLANTIC CITY, PLAINTIFFS,
v.
RAY KRAMER, MAYOR OF ASBURY PARK AND THE CITY COUNCIL OF ASBURY PARK, AND ALAN KLIGERMAN, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 29, 1976.
*14 Mr. Henry Gorelick for plaintiff Donald C. Young (Messrs. Hayman, Gorelick & Groon, attorneys).
Mr. William F. Hyland, Attorney General, attorney for defendants Brendan T. Byrne, Governor of the State of New Jersey, State of New Jersey, New Jersey State Senate, General Assembly of the State of New Jersey (Mr. Paul G. Levy, Assistant Attorney General, of counsel and on the brief).
Mr. Murray Fredericks for defendant City of Atlantic City.
Mr. James L. Cooper for plaintiffs Joseph A. Lazarow, individually and as chairman, and Frank J. Siracusa, individually and as Treasurer of, and the Committee to Rebuild Atlantic City (Messrs. Cooper, Perskie, Neustadter & Katzman, attorneys).
Mr. Norman H. Mesnikoff for defendants Ray Kramer, Mayor of Asbury Park, and the City Council of Asbury Park.
*15 Mr. Joseph T. Wilkins for defendant Alan Kligerman.
GRUCCIO, J.S.C.
This is a declaratory judgment action to determine the constitutionality of the 1976 Assembly Concurrent Resolution No. 126 (ACR-126) which deals with casino gambling under Article IX, paragraph 7 of the New Jersey Constitution (1947). This issue is before the court in the two above-captioned matters.
Plaintiff in the first matter is Donald C. Young. Plaintiff operates a business within Atlantic City, the municipality affected by ACR-126, and philosophically supports the casino gambling proposition. Defendants are the Governor of New Jersey, Brendan T. Byrne, the State of New Jersey, the Senate and General Assembly of New Jersey and Atlantic City. Defendants agree with plaintiff that ACR-126 is constitutional under Article IX, paragraph 7 and may properly be submitted to the voters on the November 1976 ballot.
Plaintiffs in the other matter are Joseph A. Lazarow and Frank J. Siracusa, individually and as chairman and treasurer, respectively, of the Committee to Rebuild Atlantic City. Defendants are Ray Kramer, Mayor of Asbury Park, the City Council of Asbury Park and Alan Kligerman. Defendants Kramer and the City of Asbury Park have been opposed to ACR-126 but chose not to file an answer or appear at oral argument. Defendant Kligerman is a member of the "No Dice Committee" which opposed the original casino gambling proposal, 1974 Resolution, ACR-128 and he has expressed opposition to ACR-126.
Plaintiff Young moved to consolidate both matters and the Attorney General moved to intervene in Lazarow v. Kramer. The court granted both motions.
There are procedural questions to be answered before I may rule on the constitutionality of ACR-126. The first procedural question is whether this action is properly before the court under the Uniform Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq. The purpose of the Uniform Declaratory Judgment Act is "to settle and afford relief *16 from uncertainty and insecurity with respect to rights, status and other legal relations." N.J.S.A. 2A:16-51. However, to maintain a declaratory judgment action there must be a "justiciable controversy" between adverse parties Unsatisfied Claim and Judgment Fund Board v. Concord Ins. Co., 110 N.J. Super. 191 (Law Div. 1970); Trustees of Rutgers College in New Jersey v. Richman, 41 N.J. Super. 259 (Ch. Div. 1956); New Jersey Turnpike Auth. v. Parsons, 3 N.J. 235 (1949), and plaintiff must have an interest in the subject matter of the suit. New Jersey Home Builders Ass'n v. Division on Civil Rights, 81 N.J. Super. 243 (Ch. Div. 1963), aff'd 45 N.J. 301 (1965). In Lazarow an actual controversy is clearly evidenced by defendants' opposition to ACR-126 and in particular by defendant Kligerman's answer and motion to have ACR-126 declared unconstitutional. Plaintiffs interest in the constitutionality of ACR-126 is derived from their present efforts to raise funds and to educate the public on the merits of ACR-126. The uncertainty concerning the constitutionality of ACR-126 is impairing plaintiffs' fund raising activities, which funds are necessary to mount a campaign to educate the public on the merits of ACR-126, and therefore they have a direct interest in the subject matter of this controversy.
In Young the Attorney General challenges whether plaintiff has met the standing and controversy requirements of the Declaratory Judgment Act. I find it unnecessary to rule on the Attorney General's position regarding plaintiff Young since both matters have been consolidated and both deal with the constitutionality of ACR-126.
The second procedural question was raised by defendant Kligerman. He alleged that plaintiffs in Kramer had not complied with R. 4:67-2(a) which provides that in summary actions the complaint must be verified or accompanied by affidavit. At oral argument defendant withdrew this alleged procedural defect since a verified amended complaint was subsequently filed.
*17 Before the court immerses itself in the constitutional issue, a review of the factual background is necessary. In 1974 the State Legislature adopted ACR-128 which proposed a constitutional amendment to allow statewide casino gambling. ACR-128 was submitted to the electorate in the 1974 general election, at which time ACR-128 was defeated. Within two years thereafter the Legislature adopted ACR-126 which proposes to amend the New Jersey Constitution to allow casino gambling in Atlantic City exclusively. ACR-126 is to be submitted to the electorate in the 1976 general election in November.
An issue as to the constitutionality of ACR-126 arises from a reading of Article IX, paragraph 7 of the New Jersey Constitution (1947) which states:

7. Resubmission of rejected amendments.

If at the election a proposed amendment shall not be approved, neither such proposed amendment nor one to effect the same or substantially the same change in the Constitution shall be submitted to the people before the third general election. [Emphasis supplied]
There is no dispute that ACR-126 is being submitted to the public within two years of the submission of ACR-128. Therefore the issue boils down to whether the proposed constitutional amendments are the "same or substantially the same."
What is meant by the "same or substantially the same" under Article IX, paragraph 7 has not yet been interpreted in New Jersey. In the New Webster Encylopedic Dictionary of the English Language, 743 (1971), "same" is defined as "identical, not different or other." "Substantially the same" has been interpreted to mean that it is the same in all important particulars. Darlington v. Studebaker-Packard Corp., 191 F. Supp. 438 (N.D. Ind. 1961).
ACR-128 proposed to amend the Constitution by adding subparagraph D to Article IV, Section VII, paragraph 2, which read:
*18 It shall be lawful for the Legislature to enact general or special laws under which gambling houses or casinos may be established and owned by and operated under the authority and control of the State, and may be located in specified municipalities. The type and number of such casinos or gambling houses and of the gambling games which may be conducted in any such establishment shall be determined by or pursuant to law. The entire net proceeds of any gambling establishment operated by the State under authority of this subparagraph shall be paid into the State Treasury to be used for public purposes through appropriations. No gambling establishment authorized under this subparagraph shall be located within the territorial limits of any municipality unless the question of permitting the location therein of such establishments pursuant to the particular law authorizing the same shall have been submitted to the voters of the municipality in question and to the voters of the county wherein said municipality is located, in such manner and form as said law shall provide at any general or special election and shall have been approved by a majority of the voters of the county and of the said municipality voting thereon.
The current proposal, ACR-126, proposes to amend Article IV, Section VII, paragraph 2 by adding subparagraph D, which reads:
It shall be lawful for the Legislature to authorize the establishment and operation of gambling casinos located in the city of Atlantic City, county of Atlantic. The site, type and number of such casinos, the gambling games which may be conducted therein, and the manner of regulation or operation of such casinos by the State or any instrumentality thereof shall be determined by or pursuant to law. The entire net proceeds accruing to the State from any such casinos shall be set aside in a special fund administered by the State Treasurer, to be appropriated by the Legislature according to law for the reduction of property taxes, rentals, and telephone, electric, gas and municipal utilities charges of eligible senior citizens and disabled residents of the State.
It is plaintiffs' contention that ACR-128 and ACR-126 are not the "same or substantially the same." I concur with that contention. Although both proposed amendments are concerned with establishing casino gambling in New Jersey, they differ in three significant respects. Firstly, ACR-128 provided for state ownership and operation of gambling casinos whereas ACR-126 permits private ownership *19 and operation under state regulation. Secondly, ACR-128 provided for gambling casinos statewide while the current proposal limits the location of casinos to Atlantic City. Finally, ACR-128 provided for the gambling revenues to be paid into the state treasury for public purposes whereas ACR-126 specifically earmarks the gambling revenues to a special fund for senior citizens and disabled residents of New Jersey.
Defendant Kligerman contends that the use of the word "regulation" rather than "authority" in ACR-126 does not imply that the current version would legalize private ownership of casinos while ACR-128 would limit it to state ownership. However, ACR-128 specifically stated that the casinos were to be "owned by and operated under the authority and control of the State," while ACR-126 does not include the term "owned" in the proposed subparagraph D to Article IV, Section VII, paragraph 2. Even if it is defendant's contention that ACR-126 is the same as ACR-128 because the term "ownership" was not on the 1974 ballot submitted in the general election, I cannot accept it. It is not the ballots which must be different to satisfy the constitutionality of amending the Constitution under Article IX, paragraph 7, but the proposed amendments themselves which must be different. This is so because the ballot is only a synopsis of the proposed amendment. The ballot is neither intended to be the place where the entire text of an amendment is printed nor is a practical place to do so. The only requirement is that the ballot not be misleading. It is the public's responsibility to educate and familiarize themselves on a proposed constitutional amendment so the entire text does not have to be printed on the ballot.
Defendant further contends that the public understood through public statements of the Governor, legislative leaders and civil leaders of Atlantic City that ACR-128 was going to establish gambling casinos in Atlantic City only. This argument is without basis in light of Article IX, paragraph 7, which prohibits the resubmitting of the same or *20 substantially the same amendment. Article IX, paragraph 7, does speak in terms of the proposed amendment and not in terms of what various leaders said an amendment was.
Defendant alleges that the earmarking of gambling revenues under ACR-126 which is for the resident's purpose of "providing reductions in property taxes, rentals, telephone, gas, electric and municipal utilities charges of eligible senior citizens and disabled residents of this State, in accordance with such formulae as the legislature shall provide "is essentially the same as placing the gambling revenues in the general treasury and then having the Legislature appropriate the funds to benefit senior citizens and disabled residents. I reject defendant's allegation that ACR-128 and ACR-126 are the same in use and dedication of the funds. The argument that the Legislature could do what ACR-126 specifically does in earmarking the funds is speculative and lacking in merit. ACR-128 left the fund's use open while ACR-126 specifically and without qualification earmarks the same to senior citizens and disabled residents.
Defendant alleges that ACR-126 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because the State in earmarking its gambling revenues to "eligible senior citizens" and disabled residents denies aid to needy persons who fit neither category and thus creates an arbitrary and unjust classification. Where there is no suspect class or infringement of a fundamental right, the classification need only have a rational relationship to some state purpose in order to satisfy the equal protection clause. San Antonio School District v. Rodriguez, 411 U.S. 1 at 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Under our facts all that need be shown is that there is a rational relationship between the classification and the state purpose since neither age, Morales v. Minter, 393 F. Supp. 88 (D.C. Mass. 1955), nor wealth have been declared a suspect class. San Antonio v. Rodriguez, supra.
The state purpose here is to provide for the daily expenses of its needy senior citizens and disabled residents *21 with the finite funds available. This type of classification is valid. I judicially notice the plight of senior citizens and disabled people who exist on meager or limited incomes and who are unable to meet the costs of their daily expenses for necessities. I find the purpose both salutary and universally recognized. Defendant does not contend that similarly situated senior citizens or disabled residents are being denied equal protection of the laws. Defendant does contend that singling out senior citizens and disabled residents from the class of needy persons as the beneficiaries of the revenue from the gambling casinos is an invidious discrimination. However, it is not an invidious discrimination to include only senior citizens and disabled residents to the exclusion of other needy people in receiving the gambling revenues since it is the Legislature's prerogative to attack what it believes to be the most pressing part of the total problem. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). In fact, the Social Security Act and the Federal Employees' Compensation Act are examples of federal legislation which grant benefits to people based upon their age and inability to work due to a disability.
The courts have granted the legislature wide latitude in making classifications when applying the Equal Protection Clause to social and economical legislation, Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L. Ed 2d 436 (1968), and it is "not fatal that the classification is wanting in theoretical * * * uniformity or mathematical nicety or that there be some inequality in practice." Schmidt v. Newark Bd. of Adjust, 9 N.J. 405, 418 (1952).
On the basis of Levy v. Louisiana, supra, and Williamson v. Lee Optical Co., supra, this court finds there is a rational state purpose for the classification based on one's age and one's disability. It is not for the court to impose its views on what the Legislature has done or to question their *22 discretion beyond the issue of whether the classifications are for a rational state purpose.
Defendant orally argued that ACR-126 denies him his rights under the Equal Protection Clause of the United States Constitution because there is no time limitation as to ACR-126 in earmarking these funds for senior citizens and the disabled. The court takes judicial notice of the many laws of this State and elsewhere which appropriate money to certain groups without time limitation. The proper way to change this is by overturning the statute or amendment in the proper procedural manner.
Defendant cites Judge Botter's opinion in Robinson v. Cahill, 119 N.J. Super. 40, 49 (Law Div. 1972), for the proposition that a scheme of taxation designed to benefit one class at the expense of another without sufficient rationale is a denial of equal protection. Defendant attempts to analogize that situation to our facts. Defendant is mistaken. The denial of equal protection in that matter was not based on an arbitrary classification of individuals but rather on the unequal disbursement of funds to school districts on the basis of their property tax which bore no reasonable relation to the educating of children in a particular school district. Defendant failed to mention Robinson v. Cahill, 62 N.J. 473 (1973), in which our Supreme Court affirmed the lower court but not upon the basis that there was a denial of equal protection of the law. Rather the court found the taxation scheme to finance public education unconstitutional under the constitutional provision which imposes upon the State the duty to furnish a thorough and efficient system of public schooling.
Finally, defendant Kligerman alleges ACR-126 violates the Equal Protection Clause by denying other municipalities throughout the State the economic benefits which Atlantic City may derive from having the casinos located there exclusively. This argument has no merit because equal protection considerations do not apply to municipal corporations *23 which are themselves creatures of the State. Glassboro v. Byrne, 141 N.J. Super. 19 (App. Div. 1976).
Based upon the aforementioned reasons, I grant plaintiffs' consolidated declaratory judgment action by finding ACR-126 constitutional under Article IX, paragraph 7 of the New Jersey Constitution (1947) and finding that ACR-126 does not violate the Equal Protection Clause of the United States Constitution.