REQUESTED BY: John A. Gale, Nebraska Secretary of State
You have requested our opinion as to whether four initiative petitions related to gambling that have been presented to your office for filing are facially unconstitutional. Your questions relate to compliance of the initiatives with two portions of Neb. Const. art. III, § 2. This constitutional provision requires, in part, that "[i]nitiative measures shall contain only one subject." You first ask us to advise whether any of the proposed initiatives contain more than one subject in contravention of this requirement. In addition, art. III, § 2, provides that "[t]he same measure, either in form or in essential substance, shall not be submitted to the people by initiative petition, affirmatively or negatively, more often than once in three years." In light of the fact that several initiatives relating to gambling were placed on the ballot in 2004, you second request is that we give guidance as to whether any of the initiative petitions violate this "resubmission" provision, as three years have not passed since the people voted on the 2004 initiative petition measures. While you have requested an informal opinion, we have determined that, in view of the significant public interest regarding these questions, issuance of a formal opinion is appropriate.
I. THE 2006 AND 2004 GAMBLING INITIATIVES.
Prior to addressing the constitutional issues presented in your request, we believe it will be helpful to briefly summarize the 2006 gambling initiative proposals filed with your office, as well as the 2004 measures.
A. 2006 Initiatives
1. Video Keno Initiative.
This initiative petition proposes the enactment of amendments to the Nebraska County and City Lottery Act, Neb. Rev. Stat. §§9-601 to 9-653 (1997 and Cum. Supp. 2004), to authorize "video keno." "Video keno" is defined as a game "in which each player selects or quick picks numbers from a total of eighty numbers displayed on a video player station and a computer or other electronic selection device randomly selects numbers from the same pool of eighty numbers and the winning plays are determined by the correct matching of the numbers selected by the player with the numbers randomly selected by the computer or other electronic selection device and displayed on the video keno player station;. . . ." In addition to allowing video keno, the initiative includes provisions regarding remission of a tax on gross gaming revenue from video keno, with ten percent of such taxes credited to the Compulsive Gamblers Assistance Fund and the remainder credited to the Department of Revenue's Charitable Gaming Operations Fund. The initiative also provides for the distribution of gross gaming revenue to counties, cities, or villages and lottery operators.
2. "Three Casinos" Initiatives.
The Committee for Better Schools and More Jobs in Nebraska, Inc., is the sponsor of the other three initiative proposals. The first initiative proposes to amend Neb. Const. art. III, § 24, by adding a new subsection (5) to permit up to three state authorized, regulated, and licensed casinos, no more than one to be located in each congressional district, which would be allowed to conduct any traditional form of casino gambling. The second initiative proposes a statute creating the Nebraska Gaming Control Board [the "Board"] to license and regulate casino gambling. This initiative further establishes the membership of the Board, and the terms of office of Board members. The third initiative would provide for the exclusive uses of tax receipts from authorized casino gambling as follows: (a) $750,000 to the Board for operations; (b) $3 million to the Compulsive Gamblers Assistance Fund; (c) After paying (a) and (b), 5% of the remainder not to exceed $10,000,000 to the State Racing Commission for live horse race purse offerings; and (d) After paying (a) and (b), 95% of remaining receipts to provide assistance to K-12 education in Nebraska as the Legislature directs.
B. 2004 Initiatives.
In 2004, three initiative petitions related to gambling were presented to the voters. Initiative Measure 417 proposed to amend Neb. Const. art. III, § 24, to provide for the enactment of laws by initiative measure to provide for the authorization, operation, regulation, and taxation of all forms of games of chance. Initiative Measure 420 proposed a statute to: (1) authorize all games of chance at casinos in metropolitan class cities within two miles of the Nebraska border; (2) authorize the use of electronic, mechanical, or other gaming devices at strategic premises where at least 250 of such devices are operated, as well as at racetracks; and (3) authorize the use of limited gaming devices at casinos, strategic premises, racetracks, and establishments selling alcoholic liquor for consumption on the premises. Measure 420 also proposed to establish the numbers of such casinos and gaming devices to be operated at various locations, and to create the Nebraska Gaming Commission to regulate such gaming. Initiative Measure 419 proposed establishing a tax on gross gaming revenue at permitted locations of 36% of the first $15 million of gross gaming revenue and 20% of gross gaming revenue in excess of $15 million, to be distributed as follows: (1) 75% of gaming tax revenues from casinos to the State General Fund and 25% to the community authorizing casino gambling; and (2) 25% of gross gaming revenues at other permitted locations to the State General Fund and 75% to the authorizing community. Measure 420 also established an annual gaming license fee of $100 on each operator per permitted location.
Initiative Measure 417 was defeated by a vote of 363,478 in favor to 380,424 against. Initiative Measure 420 was also defeated, with 394,865 voting against and 353,248 in favor of adoption of the initiative. Initiative Measure 419 was adopted by a vote of 380,161 for and 362,673 against.
II. ANALYSIS OF THE SINGLE SUBJECT REQUIREMENT IN NEB. CONST. ART. III, § 2.
While the Nebraska Supreme Court has not definitively determined the scope and meaning of the "single subject" requirement for initiative petition measures in art. III, § 2, guidance on the Court's likely interpretation of this provision can be gleaned from the concurring opinions in Loontjer v. Robinson, 266 Neb. 902, 670 N.W.2d 301 (2003). Loontjer was an action to enjoin placing on the ballot an initiative seeking to amend the Nebraska Constitution to allow expanded gambling, specifically, electronic gaming devices. The district court rejected the claim that the measure was not legally sufficient due to the sponsors failure to include a sworn statement with their street addresses, finding that they had substantially complied with this requirement by providing enough information to identify and locate them as sponsors of the petition. Id. at 906-07, 670 N.W.2d at 305. The District Court enjoined the Secretary of State from placing the measure on the ballot, however, determining the petition contained multiple subjects in violation of the single subject requirement in art. III, § 2. Id. at 907, 670 N.W.2d at 305. The majority opinion in Loontjer concluded the District Court should have determined that the petition was not legally sufficient for failure to include a sworn statement containing the names and addresses of the sponsors. Id. at 911, 670 N.W.2d at 309. Thus, while affirming the District Court's decision to enjoin placing the initiative on the ballot, the majority found it unnecessary to address the single subject rule. Id. at 912, 670 N.W.2d at 209.
While the majority opinion in Loontjer did not address the single subject issue, two concurring opinions (one by Chief Justice Hendry, the other by Justice Wright, joined by Justice Gerrard), addressed the single subject requirement. These three Justices expressed the view that the "natural and necessary connection" test set out in Munch v. Tusa, 140 Neb. 457,300 N.W. 385 (1941), provided the appropriate standard in evaluating whether an initiative measure seeking to amend the Constitution contains more than one subject. 266 Neb. at 917-18,670 N.W.2d at 312-13 (Hendry, C.J., concurring); 266 Neb. at 923,670 N.W.2d at 316 (Wright, J., and Gerrard, J., concurring). Munch involved consideration of whether a proposal to amend the Omaha home rule Charter was invalid because it contained dual propositions. Discussing the issue, the Court in Munch noted "`[t]he rule has been laid down that a constitutional amendment which embraces several subjects, all of which are germane (near or akin) to the general subject of the amendment, will, under such a requirement, be upheld as valid and may be submitted to the people as a single proposition.'" 140 Neb. at 462, 300 N.W. at 389 (quoting 11 Am.Jur. 635, § 31)). The Court found "the controlling consideration in determining the singleness of an amendment is its singleness of purpose and the relationship of the details to the general subject . . .", and stated "[t]he rule followed by a majority of American jurisdictions is to the effect that where the limits of a proposed law, having natural and necessary connection with each other, and, together, are a part of one general subject, the proposal is a single and not a dual proposition." Id. at 463,300 N.W. at 389.
In his concurring opinion in Loontjer, Chief Justice Hendry, noting that art. III, § 2, provides that "[t]he constitutional limitations as to the scope and subject matter of statutes enacted by the Legislature shall apply to those enacted by the initiative . . .", concluded "[t]his sentence clearly applies to statutes enacted by initiative and `incorporates' the `one subject' requirement for legislative bills and resolutions found in Neb. Const. art. III, § 14." 266 Neb. at 918,670 N.W.2d at 313
(emphasis in original). Because this portion of art. III, § 2, refers only to statutes proposed by initiative, the Chief Justice found the portion of art. III, § 2, providing "[i]nitiative measures shall contain only one subject" must refer "to the only remaining initiative power, that being the initiative whereby constitutional amendments may be adopted by the people." Id. The Chief Justice concluded that the standard applicable to judging the single subject limit with respect to constitutional amendments was "narrower than that applied to statutes" due to the "`seriousness of the business in which we are engaged. A legislative act may be amended or repealed at any succeeding session of the legislature. A constitutional provision is intended to be a much more fixed and permanent thing.'"266 Neb. at 919, 670 N.W.2d at 313 (quoting State ex rel. Hall v. Cline, 118 Neb. 150, 154-44, 224 N.W. 6, 8 (1929)). Justice Wright agreed with this view, stating that "[c]onstitutional amendments are not to be proposed as package deals which contain multifaceted proposals . . .," and that "by requiring a single subject when the initiative petition seeks to amend the constitution, the public is not forced to vote for several measures in order to pass a specific measure which is contained within the package." 266 Neb. at 922-23, 670 N.W.2d at 315-16.
Finally, Justice Wright's concurrence noted that "[t]he primary purpose of the single subject rule is to prevent `log-rolling', the practice of combining dissimilar propositions into one proposed amendment `so that voters must vote for or against the whole package even though they would have voted differently had the propositions been submitted separately.'" 266 Neb. at 920,670 N.W.2d at 314 (quoting Tilson v. Mofford, 153 Ariz. 468, 471,737 P.2d 1367, 1370 (1987)). He further stated "[t]he rule is designed to ensure that decisions made at the polls represent the free and mature judgment of the electors, so submitted that they cannot be constrained to adopt measures of which in reality they disapprove, in order to secure the enactment of others they earnestly desire." Id. (citing Kerby v. Luhrs, 44 Ariz. 208,36 P.2d 549 (1934)).
Based on the foregoing, we believe that the Nebraska Supreme Court, if called upon to adopt the standard for review of initiative measures to amend the Constitution for compliance with the "single subject" requirement in art. III, § 2, will likely apply the "natural and necessary connection" test articulated in Munch v. Tusa and discussed in the concurring opinions in Loontjer. Also, the Court will apply a narrower standard to single subject questions involving initiatives proposing to amend the Constitution than will be applied to statutory initiatives. Initiatives proposing the enactment of statutes will be governed by the more liberal standard of review to judge whether statutes contain more than one subject under Neb. Const. art. III, § 14.
III. ANALYSIS OF THE THREE YEAR "RESUBMISSION" PROHIBITION IN NEB. CONST. ART. III, § 2.
The Nebraska Supreme Court has not construed the meaning of the prohibition in art. III, § 2, against submission of the "same measure, either in form or in essential substance, either affirmatively or negatively, more often than once in three years." As interpretation of this clause is a matter of first impression in Nebraska, resort to basic rules of constitutional construction is required to attempt to ascertain its meaning.
"Courts must apply and enforce the constitution as it is written." State ex rel. Spire v. Public Employees Retirement Bd.,226 Neb. 176, 178, 410 N.W.2d 463, 465 (1987). "In determining the meaning of a constitutional provision, [a court] must look to the plain and clear language contained therein." Banner County v. State Bd. of Equal., 226 Neb. 236, 252, 411 N.W.2d 35, 45 (1987). "The words of a constitutional provision will be interpreted and understood in their most natural and obvious meaning unless the subject indicates or the text suggests they are used in a technical sense." State ex rel. Spire v. Beermann, 235 Neb. 384,390, 455 N.W.2d 749, 752 (1990). "[T]he courts should accord to [the language of the Constitution] the meaning which obviously would be accepted by the layman." Mekota v. State Bd. of Equal.,146 Neb. 370, 378, 19 N.W.2d 633, 638 (1945). In construing the meaning of language in the Constitution, it is "appropriate and helpful to consider, in connection with the historical background, the evil and mischief attempted to be remedied, the objects to be accomplished, and the scope of the remedy its terms imply." State ex rel. Spire v. Beermann, 235 Neb. at 390,455 N.W.2d at 752.
The purpose of the prohibition against resubmission of measures which are the same "in form or in essential substance" more than once in three years was discussed by Judge Merritt in a 2004 District Court decision. Duggan v. Beermann, Docket 518, Page 114 (Order dated November 7, 2004). Judge Merritt explained the purpose of this provision as follows:
 The reason for such a provision is obvious. It is intended to prevent the resubmission of proposed legislation or constitutional amendments which have been rejected, so that the people are not continually asked to approve a measure which they have previously declined to adopt. The three-year period between submission of similar measures serves as a check against continued resubmission of proposals which have failed to garner popular support.
Duggan v. Beermann, Order at 16 (Emphasis added).
The "resubmission clause" prohibits submission of "the same measure, either in form or in essential substance, more often than once in every three years." As such, the prohibition applies not only to measures which are "the same," but also to those that are of the same "essential substance." "Essential" means "of or constituting the intrinsic, fundamental nature of something; basic, inherent;" Webster's New Universal Unabridged Dictionary 624 (2d ed. 1983). "Substance" is defined as "the real or essential part or element of anything; essence, reality; matter." Id. at 1817. Thus, the plain language of Nebraska's resubmission clause precludes the submission of measures which share the same fundamental nature or essence more than once every three years.
Courts in other jurisdictions have construed constitutional provisions precluding resubmission of measures based on language which varies from the prohibition in art. III, § 2. The Oklahoma Constitution provides that "[a]ny measure rejected by the people, through the powers of the initiative and referendum, cannot be again proposed by the initiative within three years thereafter by less than twenty-five per centum of the legal voters." Okla. Const. art. 5, § 6. The Oklahoma Supreme Court has interpreted this clause to bar the resubmission of measures which do not "differ substantially as to form and purpose. . . ." In re Initiative Petition No. 271, 373 P.2d 1017, 1019 (Okla. 1980). In that case, the Oklahoma Court determined an initiative petition to amend Oklahoma's Constitution relating to reapportionment of the State Legislature submitted "a substantially different measure from that submitted" by a prior initiative because the earlier petition "differ[ed] from the present petition in a number of different details." Id. In a later case, however, the Oklahoma Supreme Court held a measure proposing to allow territorial or marketing agreements between brewers of beer or cereal malt beverages and wholesalers was not significantly different from a prior proposal and thus could not be submitted to the voters. In re Initiative Petition No. 314, 625 P.2d 595
(Okla. 1980). The Court reached this result even though the measure, while it included one part virtually the same as the prior initiative, also contained numerous other provisions related to the regulation of alcoholic liquor which were not part of the previous initiative. Id. at 597-98, 609-613. Phrasing the question as whether the measure was "any less a resubmission simply because it [was] set forth in an initiative containing many other proposals . . .," the Court stated:
 The answer is obviously no. Proponents' arguments that under Initiative Petition 271 we must be confined in our analysis of the issue to comparing the entire `measure' of S.Q. 550 to the measure of S.Q. 530 and therefore find a multitude of `significant differences' are not well taken. Initiative Petition 271 did not concern a situation such as we have before us and the Court there certainly did not envision a situation where a resubmitted measure would be buried in an initiative containing numerous additional proposals.
Under proponents' theory the same measure could be resubmitted . . . so long as it was subsequently presented in a package containing changes in other areas. We emphatically reject such a holding, for it takes no imagination at all to realize that it would nullify Art. 5, § 6.
625 P.2d at 597-98.
The New Jersey Constitution contains a resubmission prohibition applicable to constitutional amendments proposed by its legislative branch which provides: "If at the election a proposed amendment shall not be approved, neither such proposed amendment nor one to effect the same or substantially the same change in the Constitution shall be submitted to the people before the third general election." N.J. Const. art. IX, 7. In Young v. Byrne, 144 N.J. Super. 10, 364 A.2d 47 (N.J.Super.Ct. Law Div. 1976), the New Jersey Superior Court concluded this provision did not preclude submission of a legislative resolution to allow casino gambling even though a prior proposal to allow casino gambling had been rejected by voters two years earlier. Discussing whether the two proposals were "the same or substantially the same", the New Jersey Court stated:
 What is meant by the `same or substantially the same' under Art. IX, paragraph 7 has not yet been interpreted in New Jersey. In the New Webster Dictionary of the English Language, 743 (1971), `same' is defined as `identical, not different or other.' `Substantially the same' has been interpreted to mean that it is the same in all important particulars.
Id. at 17, 364 A.2d at 51.
Applying this standard, the New Jersey Court concluded the two proposals were not "substantially the same" because "they differ[ed] in three significant respects." Id. at 18,364 A.2d at 52. The differences noted were that the later amendment proposed casino gambling only in Atlantic City under private ownership, with gambling revenues specifically earmarked to be placed in a special fund for senior citizens and disabled residents, while the earlier amendment proposed allowing casinos statewide under state ownership, with gambling revenues to be paid into the State Treasury for public purposes. Id. at 18-19, 364 A.2d at 52.
These and other court decisions from jurisdictions outside Nebraska are not particularly helpful in determining the meaning of Nebraska's resubmission clause, as the language in our Constitution, barring submission of the same measure "in form or in essential substance", differs from resubmission provisions in other States' Constitutions. The prohibition against measures having the same "essential substance" means Nebraska's Constitution precludes the submission of measures which share the same fundamental nature or essence more than once every three years. We believe our Court will interpret this language in its natural and obvious sense, in a manner which fulfills its purpose to prevent submission of initiative measures where the essence or gist of such measures has been submitted to the voters within three years of the proposed submission.
IV. APPLICATION OF THE SINGLE SUBJECT RULE TO THE 2006 INITIATIVES.
"The constitutional limitations as to the scope and subject matter of statutes enacted by the Legislature shall apply to those enacted by the initiative." Neb. Const. art. III, § 2. Initiative petitions proposing the enactment of statutes are thus subject to the requirement in Neb. Const. art. III, § 14, providing that "[n]o bill shall contain more than one subject, and the subject shall be clearly expressed in the title." In construing the meaning of this requirement, the Nebraska Supreme Court, in Midwest Popcorn Co. v. Johnson, 152 Neb. 867, 872,43 N.W.2d 174, 178 (1950) stated: "An act, no matter how comprehensive, is valid as containing but one subject if a single main purpose is within its purview and nothing is included within it except that which is naturally connected with and incidental to that main purpose." The Court has stated the rule as follows: "If an act has but one general object, not matter how broad that object may be, and contains no matter not germane thereto, and the title fairly expresses the subject of the bill, it does not violate Article III, section 14, of the Constitution." Anderson v. Tiemann, 182 Neb. 393, 408-09, 155 N.W.2d 322, 332 (1967).
Applying this standard, the Video Keno Initiative petition to amend the Nebraska County and City Lottery Act appears to satisfy the single subject rule for statutory enactments. The subject of the petition is amendment of the Nebraska County and City Lottery Act to allow the conduct of a new form of keno, "video keno," including provisions relating to the taxation and use of proceeds from video keno. The object of the initiative is to authorize video keno, and the provisions regarding taxation and use of proceeds from such gaming are germane to and naturally connected with this purpose.
The same is also true of the two statutory initiatives included in the Three Casinos Initiatives. The sole object of the first statutory initiative is to authorize the exclusive use of tax receipts from authorized casino gambling. Identification of the recipients of such tax funds, and the amounts to be received, are matters which are germane to and naturally connected with the initiative's single object and purpose. The sole object of the second statutory initiative is to create a Nebraska Gaming Control Board ["Board"] to license and regulate casino gambling. The provisions of the initiative regarding the Board's licensing and regulatory authority, as well as the composition of its membership, are germane to and naturally connected with the initiative's overall object.
The remaining initiative involves a proposed constitutional amendment. As noted previously, we believe that, based on the concurring opinions in Loontjer, the Nebraska Supreme Court will likely adopt the "natural and necessary connection" test in Munch v. Tusa in assessing if an initiative to amend the Constitution satisfies the single subject requirement in the last sentence in art. III, § 2. This is a narrower standard than the single subject test applied to determine the validity of statutory initiatives. Loontjer, 266 Neb. at 918-920, 670 N.W.2d at 312-314
(Hendry, C.J., concurring); 266 Neb. at 921-24,670 N.W.2d at 315-17 (Wright, J., and Gerrard, J., concurring). The Three Casinos Initiative to amend Neb. Const. art. III, § 24, appears to meet this standard. The object of the petition is to amend the Constitution to permit up to three state-authorized, regulated, and licensed casinos, with no more than one in each existing congressional district. All of the provisions of the initiative bear a natural and necessary connection to this object. The relative simplicity of the proposed amendment supports concluding it possesses a sufficient singleness of purpose to satisfy the single subject requirement.
V. APPLICATION OF THE "RESUBMISSION" PROHIBITION TO THE 2006 INITIATIVES.
Article III, § 2, prohibits submission of the "same measure, either in form or in essential substance, either affirmatively or negatively, more often than once in three years." The plain meaning of this language, barring submission of measures having the same "essential substance," precludes the submission of measures which share the same fundamental nature or essence more than once every three years.
Applying this standard to the 2006 Initiatives, we believe submission of any of the proposed measures at the next general election would violate the resubmission clause. The essence or fundamental nature of each of the proposed Initiatives is the expansion of gambling in Nebraska. This identity of substance is particularly true of the Three Casinos Initiatives. The essence or fundamental nature of each of these measures is to alter the Nebraska Constitution's ban on "games of chance" to authorize "casino gambling." While there are certainly differences in the details between the 2004 Initiatives and the 2006 Initiatives, the relevant inquiry in determining compliance with the resubmission prohibition is whether the current measures share the same "essential substance" as the prior measures. This requires assessing what is essential or fundamental to making each measure effective. The legalization of new gambling not currently authorized by the Constitution, i.e., "games or chance" or "casino gambling", is essential to both the 2004 and 2006 Initiatives. As the 2006 measures share the same "essential" or "fundamental" substance as the 2004 measures, submission of the proposals to the electorate in 2006 would contravene the resubmission prohibition in art. III, § 2.
VI. FACIAL UNCONSTITUTIONALITY OF VIDEO KENO INITIATIVE AS CONTRARY TO NEB. CONST. ART. III, § 24.
While not specifically raised as an issue in your request, we are compelled to note that the Video Keno Initiative cannot be placed on the ballot because it impermissibly proposes enactment of a statute to allow a form of gambling not permitted by the Nebraska Constitution. This office has determined that legislative proposals to authorize "electronic" or "video" keno are unconstitutional because such gambling is not a permissible form of "lottery" for community betterment purposes which can be authorized under Neb. Const. art. III, § 24 Op. Att'y Gen. No. 97013 (February 13, 1997); Op. Att'y Gen. No. 00014 (February 23, 2000). We have concluded that "electronic" or "video" keno is an impermissible "game of chance" which is absolutely prohibited by art. III, § 24. As stated in our 1997 opinion:
 The concept of individual players activating gambling devices utilizing random-generation of numbers to determine winners at each device is, in our view, inconsistent with what we believe is the narrow manner in which the people, through their Constitution, intended to grant the Legislature power to permit `lotteries' for community betterment purposes. We therefore conclude that the Legislature may not, consistent with art. III, § 24, enact legislation permitting the use of `electronic' keno devices. . . .
Op. Att'y Gen. No. 97013 at 12-13.
The Video Keno Initiative proposes enactment of an amendment to the Nebraska County and City Lottery Act to allow, in addition to the "paper" ticket keno game currently allowed which prohibits the use of player-activated gaming devices, a new form of gaming called "video keno." "Video keno" is defined as a game "in which each player selects or quick picks numbers from a total of eighty numbers displayed on a video player station and a computer or other electronic selection device randomly selects numbers from the same pool of eighty numbers and the winning plays are determined by the correct matching of the numbers selected by the player with the numbers randomly selected by the computer or other electronic selection device and displayed on the video keno player station;. . . ." "Video" keno, as defined in the initiative, is not a permissible "lottery" which can be authorized under art. III, § 24. As such, the initiative is facially unconstitutional, as it attempts to authorize by statute a form of gambling not permitted by art. III, § 24, of the Nebraska Constitution.
VII. CONCLUSION
In sum, we conclude that the Video Keno Initiative and Three Casinos Initiatives do not facially violate the single subject requirement in art. III, § 2. We further conclude that submission of these Initiatives at the 2006 general election would violate the resubmission clause in art. III, § 2, as these measures propose to expand gambling and thus are the same in "essential substance" as the 2004 gambling initiatives. Finally, we conclude that the Video Keno Initiative is also facially unconstitutional because it proposes enactment of a statute to authorize a form of gambling which conflicts with the forms of gambling which may be authorized under art. III, § 24.
 Sincerely yours, JON BRUNING Attorney General
 L. Jay Bartel Assistant Attorney General
 APPROVED: ___________________________ Attorney General